IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33828

DOUGLAS L. PORTER and MARCIA Y. )
PORTER, )
                                   )
    Plaintiffs-Appellants, )
                                     )
v. )
                                     )
MARTHA O. BASSETT and ANGIE )
MENDENHALL, )          Pocatello, September 2008
                                     )
    Defendants-Respondents, )      2008 Opinion No. 118
                                     )
and )          Filed:  October 27, 2008
                                     )
JOHN DOE I and JOHN DOE II, and all )  Stephen W. Kenyon, Clerk
other persons unknown claiming any right, )
title, estate, lien or interest in the real )
property described in the  complaint adverse )
to plaintiffs' ownership or any cloud   on )
plaintiffs' title, )
                                     )
    Defendants. )
                                     )

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Caribou County.  Hon. Don L. Harding, District Judge.

District court order is vacated in part and remanded.

Merrill & Merrill, Pocatello, for appellants.  Kent A. Higgins argued.

Racine, Olson, Nye, Budge & Bailey, Chtd., Boise/Pocatello, for respondents. John R. Goodell argued.

_____

BURDICK, Justice

Appellants Doug and Marcia Porter (the Porters) appeal from a district court order granting summary judgment to Respondents Martha Bassett (now deceased), Angie Mendenhall, and John Does I and II (collectively Bassett-Mendenhall) in this property dispute.  This case concerns the propriety of the district court's dismissal of the Porters' slander of title claim and its

1

determination of the boundary line between two parcels of land on summary judgment. We vacate in part and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Porters own land in Caribou County, Idaho that is bordered on the east and north by property owned by Mendenhall, which was formerly owned by Bassett. The land is described as follows:

> Township 11 South, Range 40 East of the Boise Meridian: Section 13: Beginning at the Southwest corner of the NE¼SW¼ of said Section 13, and running thence *following the meanderings of a hollow* Northeasterly to the Northeast corner of the NE¼SW¼; thence south 1320 feet; thence west 1320 feet, to the point of the beginning. (Emphasis added).

The second parcel of property key to the dispute is Mendenhall's land that borders the Porters' property on the north. This property is described as follows:

> Also beginning at the Southwest corner of the NE¼SW¼ of section 13, Township 11 South, Range 40 East, Boise Meridian and running thence *along the meandering of the hollow* to the Northeast corner of the SW¼, thence West to the Northwest corner of the NE¼ of the SW¼, thence south to the place of beginning. (Emphasis added).

In May 2004, the Porters contacted Bassett about constructing two fences, at shared expense, along the eastern boundary of their properties and along the north side of the hollow. Although disputes arose regarding the placement of the fences and the ownership of the Porters' property, the Porters went ahead and constructed the two fences. This worsened the dispute between the parties, and on August 11, 2004 Mendenhall filed a quitclaim deed that purported to convey the Porters' property from Bassett to Mendenhall.

The Porters filed a complaint on March 3, 2005 claiming the following: 1) breach of contract, 2) tortious interference with contract, 3) quiet title, 4) slander of title, and 5) damages pursuant to I.C. § 35-103 for construction of the fences. Bassett-Mendenhall subsequently filed an answer and counterclaim, arguing they owned the Porters' property by virtue of adverse possession and/or boundary by agreement. The Porters filed a motion seeking summary judgment on Bassett-Mendenhall's adverse possession and boundary by agreement claims.

Shortly before the pre-trial hearing on the Porters' motion for summary judgment, Bassett-Mendenhall withdrew their claims and agreed to file a quitclaim deed conveying the disputed property to the Porters. At this time, Bassett-Mendenhall also filed their cross-motion

for summary judgment, requesting summary judgment on the boundary and I.C. § 35-103 fence issues. They contended that, with the resolution of the quiet title claim through the withdrawal of their counterclaim and a summary judgment determination by the court on the boundary and fence issues, the Porters' remaining claims of breach of contract, tortious interference, and slander of title would either fail or become moot.

The district court granted Bassett-Mendenhall's cross-motion for summary judgment regarding the location of the northern boundary line between the two parcels of property; the applicability of I.C. § 35-103; and the breach of contract, tortious interference with contract, and slander of title claims. The court also determined that issues of fact not appropriate for determination on summary judgment existed as to both Mendenhall's duty to maintain half the fence along the eastern boundary line,[1] and whether the properties were open range. Subsequently, on a motion to reconsider, the district court withdrew its dismissal of the Porters' slander of title claim and stated that the Porters were entitled to recover attorney fees and costs on this claim. These fees and costs were later denied based upon the district court's determination that the Porters' fee demand made no attempt to separate out the fees and costs stemming directly from the slander of title claim. The Porters timely filed this appeal.

## II. STANDARD OF REVIEW

When reviewing a ruling on a summary judgment motion, this Court applies the same standard used by the district court. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, __, 160 P.3d 743, 746 (2007). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c).

The burden of establishing the absence of a genuine issue of material fact is on the moving party. *Hayward v. Jack's Pharmacy, Inc.*, 141 Idaho 622, 625, 115 P.3d 713, 716 (2005). However, if the nonmoving party fails to provide a sufficient showing to establish the essential elements of his or her case, judgment shall be granted to the moving party. *Atwood v. Smith*, 143 Idaho 110, 113, 138 P.3d 310, 313 (2006). This Court will liberally construe all disputed facts in favor of the nonmoving party, and all reasonable inferences that can be drawn

---

[1] The eastern fence issue was later stipulated to by the parties and a settlement was reached.

3

from the record will be drawn in favor of the nonmoving party. *Cristo Viene*, 144 Idaho at __, 160 P.3d at 746. Summary judgment is improper "if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

## III. ANALYSIS

The Porters first contend that the district court erred in determining the location of the boundary line on summary judgment. The Porters also argue that they are entitled to a trial on their slander of title claim. Finally, the Porters assert that the district court erred in refusing to apply I.C. § 35-103 to the case and in finding the Bassett-Mendenhall land was not open range. We will address each issue in turn.

### A. Boundary Line

The Porters argue the district court erred in granting summary judgment on the boundary issue for two reasons. First, they contend a determination of the boundary line was never sought by the parties. Second, they maintain the determination was not proper because the court relied on the opinion of a surveyor in deciding the issue as a matter of law, instead of examining the intent of the original parties as a question of fact. We disagree with the Porters' contention that a determination was not sought; however, we hold that the district court erred in granting summary judgment on the boundary issue.

#### 1. Issue properly before the court

The only issues considered on summary judgment are those raised by the pleadings, and the court must then also examine what issues pled have been raised in the motion for summary judgment. *Esser Elec. v. Lost River Ballistics Techs., Inc.*, 145 Idaho 912, __, 188 P.3d 854, 861 (2008). Here, the issue of the location of the boundary line was raised in the pleadings and then placed at issue by Bassett-Mendenhall's cross-motion for summary judgment. First, Bassett-Mendenhall alleged in their counterclaim that the Porters had "wrongfully and willfully erected fences . . . not on the actual legal boundary." This allegation was not only denied by the Porters in their answer, but they also provided three alternative findings regarding the true location of the boundary line in their Proposed Findings of Fact and Conclusions of Law.[2] In addition, Bassett-

---

[2] The three alternative proposed findings stated:

4

Mendenhall argued in their cross-motion for summary judgment that the proper location of the boundary was an issue remaining for trial. The boundary issue was also discussed at length by both parties during the pre-trial hearing on the motion for summary judgment.

Furthermore, as the district court stated, the Porters raised the boundary issue by arguing that I.C. § 35-103 applied. The language of I.C. § 35-103, which states that a fence is to be erected "on, or as near as practicable to, the line of said land," necessitates a determination of the true boundary line. Thus, in arguing that I.C. § 35-103 applied, and that the fence had been erected as near as practicable to the boundary line, the Porters raised the issue of the true location of the boundary line. As such, the boundary issue was raised in both the pleadings and the motion for summary judgment and was, therefore, properly before the court.

<u>2. Summary judgment</u>

Next, the Porters argue the district court erred in determining that "meanderings of the hollow" meant, as a matter of law, that the center of the hollow was the boundary line between the two parcels of property. The Porters contend the court also erred in relying on the affidavit of the surveyor. Instead, the Porters assert the meaning of the language "meanderings of the hollow" is ambiguous and, therefore, the intent of the original parties is an issue of fact that cannot be properly decided on summary judgment.

"In interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties." *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006). When an instrument conveying land is unambiguous, the intention of the parties can be settled as a matter of law using the plain language of the document. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). However, if the language of the deed is ambiguous, ascertaining the parties' intent is a question of fact and may therefore only be settled by a trier of fact. *See Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003). "Ambiguity may be found where the language of the deed is subject to conflicting interpretations." *Read*,

---

(1) The Court is unable to determine from the evidence presented whether the draftsman to the Deeds that preceed [sic] Martha Bassett's title intended to convey the ground immediately to the northwest of the hollow where Doug Porter has built a partition fence;

(2)The Court finds that the draftsman of the Deeds to the predecessor entitled to Martha Bassett's property intended to convey property only to the northwest edge of the hollow;

(3) The draftsman of the Deeds that precede title to Martha Bassett's property intended to convey property to a line between the northeast corner and the southwest corner of the quarter quarter running approximately in a straight line between the two meandering where necessary so as not to cross the hollow.

5

141 Idaho at 499, 112 P.3d at 787. The trier of fact must then determine the intent of the parties according to the language of the conveyance and the circumstances surrounding the transaction. *Neider*, 138 Idaho at 508, 65 P.3d at 530.

Conflicting interpretations may arise when no potential boundary line unambiguously fits the language contained in the deed. *Read*, 141 Idaho at 500, 112 P.3d at 788. In *Read*, the language of the deed stating "centerline of the creek," "centerline of the main tributary of the creek," and "centerline of the main tributary to Gold Creek" may have referred to one of two drainage ditches or a comparatively dry historical natural creek channel. *Id*. Neither of the drainage ditches, nor the creek channel, unambiguously fit the language contained in the deeds, making the intentions of the drafters unclear. *Id*. Therefore, the intentions of the parties had to be determined "as questions of fact with reference to the surrounding facts and circumstances," and summary judgment was not appropriate. *Id*.

Similarly, conflicting interpretations may arise when a phrase lends itself, without contortion, to a number of inconsistent meanings. *Latham v. Garner*, 105 Idaho 854, 858, 673 P.2d 1048, 1052 (1983). In *Latham*, this Court determined that the phrase "exclusively for their use" could be interpreted to mean (1) the grant of an easement right of way to the grantee, to the exclusion of all others, except the grantor; (2) the grant of an easement right of way excluding all others, including the grantor; or (3) as the grant of a fee simple estate to the grantee. *Id*. Thus, the instrument was reasonably subject to inconsistent meanings and was therefore ambiguous. *Id*. Likewise, in *Gardner v. Fliegel*, 92 Idaho 767, 771, 450 P.2d 990, 994 (1969), this Court determined that the phrase "less a strip of land 30 feet wide off the East side for roadway" was ambiguous because it may have either expressed the intent to retain the fee to the strip in the grantor, or to create an easement for roadway over the strip in favor of the grantor. *Id*. The Court found in that case that "inconsistencies in a deed may throw such a 'shadow of ambiguity' over the instrument as to warrant the introduction of parol evidence as an aid to discovering the intention of the parties." *Id*.

Furthermore, the Idaho Court of Appeals has found that where facts regarding intent are not yet fully developed, but appear to be disputed, summary judgment is not proper. *Currie v. Walkinshaw*, 113 Idaho 586, 591, 746 P.2d 1045, 1050 (Ct. App. 1987). In *Currie*, the deed description began with a call of "'along the high water level' of the river 'to a point exactly midway between the Northeast and Northwest corners of Lot 10.'" *Id*. at 590, 746 P.2d at 1049.

6

The court noted that while marked corners would normally be conclusive in a property description, a meander line was also involved which opened up the possibility that the boundary line was to follow the sinuosities of the river.[3] *Id.* The court determined the parties' respective arguments that the "midpoint" was to be found by following the shoreline of the river, or that it was to be a straight line between the two given points, were both reasonable and, therefore, a question of fact existed.[4] *Id*.

While a presumption does exist that if a natural monument has width, then the boundary is the centerline of the monument, this presumption is rebuttable and does not replace the canon that the intent of the parties is determinative. 12 Am. Jur. 2d *Boundaries* § 8 (1997); *see also New Mexico v. Hidalgo Area Dev. Corp.*, 607 P.2d 601, 602 (1980). This "centerline" presumption has been demonstrated in Idaho cases, such as *Lindgren v. Martin*, 130 Idaho 854, 949 P.2d 1061 (1997). In that case, the deed described one property line as "Trestle Creek," and the court referred to the centerline of the creek as the boundary without discussion. *Id*. at 858, 949 P.2d at 1065. However, this presumption should only apply when the deed language is unambiguous.

Here, the language of the deed is ambiguous and, therefore, a question of fact exists. The proposed boundary lines do not unambiguously fit the language of the deed, and the phrase "meanderings of the hollow" could be interpreted to mean a line either at the center of the hollow or following the sinuosities of the hollow from the SE to the NW corners. This case is very

---

[3] Meander lines differ from the description "meandering." Meander lines are defined by Black's Law Dictionary as: "A survey line (not a boundary line) on a portion of land, usu. following the course of a river or stream." *Black's Law Dictionary* 1001 (8th ed. 2004).

[4] The court relied on the following principles in making its determination that the deed language was subject to conflicting interpretations:

> A course or line given in a deed is presumably a straight line; but this presumption does not hold when there is anything to show that the course is to be determined by a fixed monument, such as a wall; and even a line extending beyond the line of such wall may be deflected from a straight line in order to conform to the distance given for the next boundary line. A call in the description of a survey for the marked line of another survey between designated points which was not a straight line, but consisted of several lines and marked corners is sufficient. A line should be construed, if possible, to mean a continuous line, and should not be deflected except in order to conform to the intention of the parties. A "meander line," whether state or national, is not considered a boundary line, but is used only for determining the acreage for which a charge should be made when title is transferred to private parties, as well as for convenience. A meander line is not a boundary, but the water of the body which is meandered is the true boundary, regardless of whether the meander line coincides with the shore line. A boundary line presumably runs straight across between known corners.

6 *G. Thompson, Commentaries on the Modern Law of Real Property* § 3054 (1962) (footnotes omitted).

7

analogous to *Currie* because two reasonable conflicting principles exist: (1) a boundary line presumably runs in a straight line between known corners, and (2) when a monument is used, the centerline of the monument is the boundary. Therefore, a genuine issue of material fact exists and summary judgment was not appropriate on the boundary issue.

**B. Slander of Title**

The Porters assert their slander of title claim was dismissed prematurely, denying them their right to trial on the claim. We agree. "Slander of title requires proof of four elements: (1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) resulting special damages." *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003). In their original complaint the Porters alleged: (1) the quitclaim deed disparaged their title; (2) it was a statement that was published to all the world by its recordation; (3) the recordation was reckless, erroneous, fraudulent, and wrongful; (4) the willingness of Bassett and Mendenhall to cloud and disparage the title demonstrates the will to vex, annoy, harass, and injure the Porters; and (5) they suffered damages as a direct and proximate result of the publication, with the amount to be determined at trial.

While the district court was correct in concluding in its motion to reconsider that it had improperly decided the Porters had not proven an essential element of the claim, the court erred in not allowing the Porters to set forth further evidence. The Porters adequately pled a cause of action for slander of title, and Bassett-Mendenhall did not raise any objections to the Porters' slander of title claim in their cross-motion for summary judgment; therefore, the Porters are entitled to a trial upon the issue.

**C. Applicability of I.C. § 35-103**

The Porters argue that I.C. § 35-103 allows them to build the northern fence on the Bassett-Mendenhall side of the hollow because that location is "as near as practicable to" the line of the land. Idaho Code § 35-103 does allow the erection of a partition fence "on, or as near as practicable to, the line of said land," but only "[w]hen two or more persons own land adjoining which is enclosed by one (1) fence, and it becomes necessary for the protection of the rights and interest of one (1) party that a partition fence be made between them. . . ." Therefore, a

8

prerequisite for the application of I.C. § 35-103 is that the adjoining parcels of land be enclosed by one fence.[5]

Here, the district court was correct in concluding that no evidence was presented to show that the two parcels of land were enclosed by a lawful fence and, thus, I.C. § 35-103 did not apply. Bassett-Mendenhall did mention historic fences in their answer and counterclaim; however, the Porters denied this allegation in their answer to the counterclaim. While the Porters now claim that the parcels are enclosed by one fence, no evidence of this has been presented. Therefore, we affirm the district court's determination that I.C. § 35-103 did not apply.

For guidance on remand, we note the statute cannot allow the erection of a statutory fence on another's property. Idaho Code § 35-103 relates to the costs of erection for the statutory fence but does not allow trespass.

## D. Open Range

In contrast to the Porters' contention, the district court did not make a determination on the issue of whether the properties were open range. Instead, the court stated that summary judgment on the open range issue was not proper because an issue of material fact exists. Therefore, we need not address this issue on appeal.

## IV. CONCLUSION

The district court's order granting summary judgment is vacated in part and remanded. Neither party is entitled to attorney fees from this appeal.

Chief Justice EISMANN and Justices J. JONES, HORTON and KIDWELL, Pro tem, **CONCUR.**

---

[5] This Court, in *Tsuboi v. Cohn*, applied I.C. § 35-103 (then C.S. § 1958) after recognizing that the "two tracts of land were enclosed by a lawful fence," indicating that the statute language requires enclosure of both parcels. 40 Idaho 102, __, 231 P. 708, 709 (1924).