## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 40375

CAMP EASTON FOREVER, INC., an Idaho )
non-profit corporation; DANIEL )
EDWARDS, a minor, by and through, )
DANIEL EDWARDS' PARENT, as Guardian )
ad Litem; MATTHEW EDWARDS, a minor, )
by and through, MATTHEW EDWARDS' )
PARENT, as Guardian ad Litem, )
 )
  Plaintiffs-Appellants, )
 )
and )
 )
SHIKAR SAFARI CLUB )
INTERNATIONAL FOUNDATION; EARL )
C. LUNCEFORE, JR., in his capacity of )
Director of SHIKAR SAFARI CLUB )
INTERNATIONAL FOUNDATION; DOES 1 )
thru 20, whose true names are unknown, )
 )
  Plaintiffs, )
 )
v. )
 )
INLAND NORTHWEST COUNCIL BOY )
SCOUTS OF AMERICA, a Washington non- )
profit corporation; INLAND NORTHWEST )
COUNCIL ENDOWMENT PROPERTIES, )
LLC, a Washington limited liability company, )
 )
  Defendant-Respondents. )

Coeur d'Alene April 2014

2014 Opinion No. 83

Filed: August 15, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

District court order granting summary judgment, affirmed.

Scott W. Reed and Dean & Kolts, Coeur d'Alene, for appellants. Kathlene L. Kolts argued.

Ramsden & Lyons, Coeur d'Alene, for respondents. Michael E. Ramsden argued.

---

BURDICK, Chief Justice

Camp Easton Forever, Inc., ("CEF") and Daniel and Matthew Edwards (collectively "the Edwardses") appealed the district court's grant of summary judgment to Inland Northwest Council Endowment Properties, LLC, and Inland Northwest Council of the Boy Scouts of America (collectively "INWC"). CEF and the Edwardses filed an action to declare the parties' rights to property INWC owns on Lake Coeur d'Alene that has been used as a Boy Scout camp since 1929. The district court held CEF and the Edwardses lacked standing because CEF lacked a legally recognizable interest and the Edwardses were not certified as class representatives. The district court also held no trust existed because all prior agreements merged into an unambiguous deed. We affirm the district court's grant of summary judgment to INWC on the grounds that the deed was an unambiguous fee simple transfer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves 132 acres of property on Lake Coeur d'Alene in Kootenai County that is part of a Boy Scout camp called Camp Easton. This property is currently owned by Inland Northwest Council Endowment Properties, LLC, which is a holding company for Inland Northwest Council of the Boy Scouts of America ("Inland Northwest Council"). The Inland Northwest Council is a Washington non-profit organization.

In 1929, F.W. Fitze owned the property. On May 18, 1929, Fitze attended a meeting of the Coeur d'Alene district committee to the Idaho Panhandle Council, Boy Scouts of America ("IPC"). The IPC was the Inland Northwest Council's predecessor. The meeting's minutes state:

> It was announced that the purpose of the meeting was to consult with Mr. Fitze regarding the purchase of the camp site owned by him. After a short discussion as to the desirability of this site, and after it was chosen as the best available site on Lake Coeur d'Alene, Mr. Fitze announced that it was his desire to present the site to the Idaho Panhandle Council as its summer camp site and that we accept it from him as his gift to the Council and the boys of our area. His only wish was that it should be accepted with the understanding that it was his desire to have it used perpetually as a camp for boys.

The minutes also stated that the chairman would appoint a committee to draft a resolution of thanks and formally accept the site.

On August 5, 1929, Fitze and his wife deeded the 132 acres to IPC. The Fitzes deeded the land for "the sum of one dollar and other valuable consideration." The deed states:

> And the above bargained premises in the quiet and peaceable possession of said party of the second part, his successors and assigns, against all and every person or persons lawfully claiming the whole or any part thereof, the said parties of the first part shall and will warrant and defend.

2

This property is donated and given to the [IPC] by F.W. Fitze and Lumira Fitze, his wife, *for use of the Boy Scouts of America*.

The camp was constructed and various improvements to the camp were made through the years.

Camp Easton now totals 421.65 acres through additional land acquisitions. Both IPC and the Inland Northwest Council have used Camp Easton as a camp for Boy Scouts of America ("Boy Scouts") members and also have accepted donations for Camp Easton. These donations include money and additional land, which have expanded and improved Camp Easton. In 1992, IPC merged with the Inland Northwest Council, who accepted ownership of the property as Camp Easton. An October 6, 1992 Memorandum of Understanding stated that "Camp Easton will continue to operate as a long term Boy Scout resident summer camp so long as it remains financially feasible."

In May of 2011, Discovery Land Company contacted Inland Northwest Council about purchasing Camp Easton. Discovery proposed acquiring another large lakefront parcel on Lake Coeur d'Alene, constructing a Boy Scout camp on it, and then trading that new camp for Camp Easton. Discovery also proposed funding an endowment for the new camp. Inland Northwest Council approved a non-binding letter of intent for this transaction in August 2011. In February 2012, the Board for the Inland Northwest Council and the Board of Inland Northwest Council Endowment Properties, LLC, each voted in favor of pursuing whether they could reach a successful transaction with Discovery.

Believing INWC would sell Camp Easton imminently, in September 2011 a group of plaintiffs filed a complaint in the district court. In November 2011, those plaintiffs filed an amended complaint and class action, which alleged INWC held Camp Easton in a constructive trust and asked the court to impose that trust to prevent irreparable wrongdoing. The amended complaint also alleged equitable estoppel, declaratory judgment, a permanent injunction, and a creation of a charitable trust as a matter of law. The INWC answered and raised defenses, including merger and statute of frauds.

The plaintiffs included CEF and the Edwardses. CEF is an Idaho non-profit corporation created to oppose the proposed sale of Camp Easton. The group's members include people who have participated in the Boy Scouts and attended Camp Easton. The Edwardses are Boy Scout members who attended Camp Easton.

The plaintiffs moved for partial summary judgment on March 12, 2012, asking that the district court determine the charitable and constructive trust claims only. The INWC moved for

summary judgment on all claims eight days later. The INWC argued the transaction was a fee simple conveyance of real property. In addition, INWC contended CEF and the Edwardses lacked standing. Both parties supported their motions with affidavits, and the court heard oral argument.

The district court granted INWC's motion for summary judgment and denied the motion for summary judgment by CEF and the Edwardses. The court held CEF and the Edwardses lacked standing because CEF lacked a legally recognizable interest and the plaintiffs did not seek to certify the Edwardses as representatives of a putative class as per I.R.C.P. 23(c). The district court also held no charitable or constructive trust existed because the doctrine of merger and the statute of frauds barred extrinsic evidence. The district court's judgment dismissed the claims by CEF and the Edwardses with prejudice, and determined there was no cognizable class or injury. CEF and the Edwardses filed a motion for reconsideration, which the district court denied on the same grounds as the motion for summary judgment. CEF and the Edwardses timely appealed.

## II. ISSUES ON APPEAL

1. Whether CEF and the Edwardses have standing.
2. Whether the district court erred in granting summary judgment on the grounds that the deed was unambiguous.

## III. STANDARD OF REVIEW

We review a district court's grant of summary judgment using the same standard the district court used when it originally ruled on the motion. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 870, 993 P.2d 1197, 1201 (1999). Therefore, we affirm summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On summary judgment, this Court liberally construes all facts in favor of the nonmoving party and draws all reasonable inferences from the facts in favor of the nonmoving party. *Hill v. Hill*, 140 Idaho 812, 813, 102 P.3d 1131, 1132 (2004). We deny summary judgment if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence. *Id.* If no disputed issues of material fact exist, then only a question of law remains. *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). This Court exercises free review over questions of law. *Id.*

4

# IV. ANALYSIS

CEF and the Edwardses argue trust law applies and forms a charitable trust over the property. They contend that standing can only be addressed after this Court decides which law applies because their approach differs depending on whether they are trust beneficiaries. The district court denied CEF and Edwardses' summary judgment on two grounds. The court held (1) CEF and the Edwardses lacked standing and (2) the unambiguous deed made a fee simple conveyance of the Fitze property.

## A. Daniel and Matthew Edwards have standing.

Courts determine standing as a preliminary question before reaching the merits of a case. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). The district court held that CEF and the Edwardses lacked standing. The district court began with CEF, holding the nonprofit had no "distinct palpable injury" shared by all or a large class of citizens. The court reasoned that selling Camp Easton was a generalized grievance and not a loss of a legally recognizable asset. The district court did not analyze individual standing for the Edwardses. Instead, the court disposed of standing by holding that the Edwardses did not timely seek class certification as per I.R.C.P. 23(c)(1), so they could not be representative of a class and lacked standing to proceed.

### 1. Standing.

The INWC argues that CEF and the Edwardses failed to show standing. Parties "must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). That injury "must be distinct and palpable and not be one suffered alike by all citizens in the jurisdiction." *Selkirk-Priest Basin Ass'n v. State ex rel. Batt*, 128 Idaho 831, 833–34, 919 P.2d 1032, 1034–35 (1996). Even when a party shows an injury in fact, "standing may be denied when the asserted harm is a generalized grievance shared by all or a large class of citizens." *Young*, 137 Idaho at 104, 44 P.3d at 1159.

The Edwardses have a distinct injury: they are members of the Boy Scouts who cannot use the camp once the camp property is sold or traded. These scouts have an injury in fact by losing use of a specific piece of property that they were previously able to use. While the district court noted that this was not a loss of money or property, the scouts will be deprived of using the

camp once the camp is no longer there. Scouts used the camp, not everyone in the area. Thus, the Edwardses and other scouts have a distinct and specific injury.

However, INWC contends that there are no facts supported by affidavit that CEF members or the Edwardses are scouts, paid dues, or used Camp Easton. We have looked to the United States Supreme Court for guidance when we consider standing. *Koch v. Canyon Cnty.*, 145 Idaho 158, 161, 177 P.3d 372, 375 (2008). Because standing is "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At summary judgment "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Id.* Standing is also an indispensable part of this Court's jurisdiction, so Idaho's summary judgment standard applies: "an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e).

CEF's complaint alleges that its members are longtime scouts, scout leaders, participants in the camp's operation, Board members of scout organizations, donors, and Camp Easton's neighbors. These allegations are not supported by affidavits. However, INWC's affidavits show that Camp Easton was a camp used by scouts. INWC admits in its answer that the Edwardses are members of the Boy Scouts of America. It is therefore undisputed that the Edwardses are Boy Scout members, so it follows that they were entitled to use the camp. Thus, the Edwardses established standing with more than mere allegations. The complaint does not specify whether the Edwardses are members of CEF.

INWC also argues that the Edwardses paying dues to the Boy Scouts of America does not establish standing because there is no evidence the scouts paid dues with any restrictions on use. INWC cites no case to support this statement. While paying dues without restriction may not mean a person can tell an organization what to do with its dues, that person can still have a distinct injury when the organization deprives him of property he could use because he paid dues. Thus, scouts are injured by losing a camp they used, even if the scouts did not restrict or

6

funnel their dues directly to the camp. Because the Edwardses have standing, we do not need to reach the issue of whether CEF has standing or whether alleged charitable trust beneficiaries have standing in order to reach the merits.

2. Class Certification for Edwardses.

The district court held "because the Plaintiffs never sought certification, there is no putative class that has standing." The court noted that "[a]s a result, Daniel Edwards and Matthew Edwards have no standing to proceed." Thus, the court denied individual standing to the Edwardses because the court denied standing to the class. Because the Edwardses had standing, the issue is whether the district court could deny individual standing based upon a denial of the class action.

Courts certify a class action if the class meets all four factors in I.R.C.P. 23(a) and at least one factor in I.R.C.P. 23(b). *Bettwieser v. New York Irr. Dist.*, 154 Idaho 317, 324, 297 P.3d 1134, 1141 (2013). Nothing in Idaho law states that a party is denied individual standing when he is not able to certify his action as a class action. Indeed, "[p]laintiffs are never *required* to seek the vindication of a class." *Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 915, 719 P.2d 1169, 1175 (1986). Idaho Rule of Civil Procedure 23(a) instead merely establishes conditions where "[o]ne or more members of a class *may* sue or be sued as representative party on behalf of all . . . . " (emphasis added). The United States Supreme Court stated: "A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class"; a denial of class certification adjudicates one of the issues. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980) (holding that even when a court denied class certification, an action brought on behalf of a class did not become moot when the named plaintiff's substantive claim expired). A plaintiff's individual claim and the claim he represents a class are two separate issues. Thus, the district court could not deny the Edwardses individual standing based upon its denial of class certification. Because the Edwardses have standing, we can proceed to the merits.

**B. The deed is unambiguous.**

The district court also denied CEF and the Edwardses their motion for summary judgment on the grounds that no trust existed as a matter of law. The court first determined that the property was not held in a constructive trust because no facts showed that IPC acquired the Fitze property by fraud or mistake. Next, the court held that the property was not held in

7

charitable trust for two reasons: (1) the deed from Fitze to IPC was unambiguous and silent as to any other agreement, so the merger doctrine applied to merge any prior agreement into the deed; and (2) even if the court could review the Minutes, the Minutes violated the statute of frauds because they were not signed by Fitze or IPC. The court acknowledged that the parties behaved in a certain way towards the property for a long time, but noted that the property was never placed in an express trust.

CEF and the Edwardses argue that the district court erred when it applied real property law instead of trust law. They argue that admitting the 1929 Minutes under trust law and reading them with the deed shows that a trust exists as a matter of law. CEF and the Edwardses alternatively argue that "for use of the Boy Scouts" is an ambiguous phrase that makes the deed ambiguous and requires admitting the Minutes, which operate as a restraint on selling the property.

A portion of the deed reads:

And the above bargained premises in the quiet and peaceable possession of [IPC], his successors and assigns, against all and every person or persons lawfully claiming the whole or any part thereof, the said parties of the first part shall and will warrant and defend.

This property is donated and given to the [IPC] by F.W. Fitze and Lumira Fitze, his wife, for use of the Boy Scouts of America.

If the deed is ambiguous, then CEF and the Edwardses argue they may use the Minutes to explain any ambiguity. However, if the deed is unambiguous, the merger doctrine applies. The merger doctrine merges a prior contract into a deed when the deed is delivered and accepted as performance of a conveyance contract. *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 382, 414 P.2d 879, 884 (1966). Even when a deed's terms vary from an earlier contract, courts must look to the deed alone to determine parties' rights. *Id.* Thus, an unambiguous deed forecloses considering another agreement, including the Minutes. Accordingly, this case comes down to one question: whether the deed is ambiguous.

1. The deed's plain language is unambiguous.

CEF and the Edwardses argue that "for use of the Boy Scouts" is subject to several reasonable interpretations and therefore the deed is ambiguous. They contend that the phrase is ambiguous because the deed describes the property's title going to IPC but the property itself as a gift for use of a different entity: the Boy Scouts of America. CEF and the Edwardses contend "for use" means the property was held in trust for the Boy Scouts. They also argue that the deed

8

is ambiguous as to whether Boy Scouts of America means the national non-profit corporation or individuals who are boy scouts.

When this Court interprets a deed, our primary goal is to give effect to the parties' real intent. *Hoch v. Vance*, 155 Idaho 636, 639, 315 P.3d 824, 827 (2013). If a deed's language is ambiguous, the parties' intent becomes a question of fact settled by a trier of fact. *Id.* The trier of fact must consider all of the surrounding facts and circumstances and view the deed as a whole and in its entirety. *Sells v. Robinson*, 141 Idaho 767, 773, 118 P.3d 99, 105 (2005). However, "[w]hen an instrument conveying land is unambiguous, the intention of the parties can be settled as a matter of law using the plain language of the document" and without using extrinsic evidence. *Porter v. Bassett*, 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008).

A deed is ambiguous when its language is reasonably subject to conflicting interpretations. *Id.* A deed is not ambiguous merely because the parties present differing interpretations to the court. *Hoch*, 155 Idaho at 639, 315 P.3d at 827. Instead, "conflicting interpretations may arise when a phrase lends itself, without contortion, to a number of inconsistent meanings." *Porter*, 146 Idaho at 404, 195 P.3d at 1217. To determine whether a deed is ambiguous, the deed must be reviewed as a whole. *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003).

Some aspects of this gift deed are undisputed. The deed states the property was "donated and given" by Fitze, which clearly shows donative intent and that the property was a gift. The property was delivered and accepted, as IPC has operated Camp Easton on the property for over eighty years. We analyze the deed within these undisputed facts and read the plain language "for use of the Boy Scouts" as part of the entire deed.

The district court interpreted the deed's language to mean "that Fitze, for consideration, transferred fee simple title to the property to IPC, and that land was for the use of the Boy Scouts of America." The court explained that the deed "does not contain a reversion, does not create or mention a trust, trustee, or beneficiary, does not restrict further alienation of the property, and does not otherwise restrict the use of the property. Had the parties desired . . . they could have included such language in the Deed."

Here, "for use of the Boy Scouts of America" is the phrase in dispute. The word "use" means "the privilege or benefit of using something." *Merrium-Webster Dictionary* 2523 (3d ed. 1971). Thus, "for use of the Boy Scouts" means that scouts have the benefit of using the

property. The deed never states that the land is "for use of the Boy Scouts of America as a camp for boy scouts." The deed does not otherwise indicate that the property must be held and used as a camp. The deed also does not include limiting language to impose a condition on land use, like "so long as the Boy Scouts of America use the property as a camp" or that the property be used "only as a camp." The deed has no provision for reversion and reentry if the Boy Scouts stop using the property. The deed never states that the land could not be sold. Thus, the deed does not state any limit on the Boy Scouts' use. The deed also states that the land is for use of the "Boy Scouts of America," which is the full name of the national corporation and does not describe individual members.

CEF and the Edwardses argue that "for use of the Boy Scouts" is ambiguous by analogizing to *Latham v. Garner*, 105 Idaho 854, 673 P.2d 1048 (1983). In *Latham*, property owners purchased easements to build a roadway with granting documents that provided the easements were granted "exclusively for their use, and unto their successors and assigns forever." 105 Idaho at 855, 673 P.2d at 1049. The servient estate owner challenged those easements, maintaining he could also use the road. *Id.* This Court held that the granting document was ambiguous because the phrase "exclusively for their use" was subject to three different reasonable interpretations: (1) granting an easement to the grantee and excluding everyone but the grantor; (2) granting an easement to the grantee that excluded everyone else; and (3) a fee simple grant to grantee. *Id.* at 858, 673 P.2d at 1052. However, the phrase "exclusively for their use" gave rise to these conflicting interpretations because the word "exclusive" was not sufficient to preclude the servient owner's use. *Id.* at 857, 673 P.2d at 1051. Also, the deed used the word "their," which did not specify who could use the easement. In contrast, here the deed was very specific that the land was given to the IPC, a part of the Boy Scouts of America. Thus, *Latham* does not show the word "use" creates ambiguity. Instead, it only shows deeds subject to conflicting interpretations are ambiguous.

Additionally, CEF and the Edwardses argue that "for use of" means "in trust for," which shows that a reasonable interpretation of the deed's language is that the property was held in trust. A settlor creates an express trust by manifesting an intention to create a trust. *Garner v. Andreasen*, 96 Idaho 306, 308, 527 P.2d 1264, 1266 (1974). A settlor's intent "requires no particular words or conduct; the settlor simply must evidence his intention, upon transferring the property, or res, to the trustee, that the trustee will hold the res for the benefit of a third person,

10

the beneficiary." *Id.* A trust's essential characteristic is holding the legal and beneficial interests separately in a fiduciary relationship. *In re Eggan's Estate*, 86 Idaho 328, 337, 386 P.2d 563, 568 (1963). Thus, no particular words are needed to create a trust, as long as the words show clear intent to transfer legal title to the trustee to hold the beneficial interest for a third person.

CEF and the Edwardses support their argument with *Davis v. United States*, 495 U.S. 472 (1990), where the United States Supreme Court interpreted a section of the Internal Revenue Code that defined charitable contribution as "a contribution or gift to or for the use of." There, the United States Supreme Court stated:

> On its face, the phrase "for the use of" could support any number of different meanings. See, *e.g.,* Webster's New International Dictionary (2d ed. 1950) ("use" defined in general usage as "to convert to one's service"; "to employ"; or, in law, "use imports a trust" relationship).
>
> . . . .
>
> . . . From the dawn of English common law through the present, the word "use" has been employed to refer to various forms of trust arrangements. See 1 G. Bogert, Trusts and Trustees § 2, p. 9 (1935); Black's Law Dictionary 1382 (5th ed. 1979) ("*Uses* and *trusts* are not so much different things as different aspects of the same subject. A use regards principally the beneficial interest; a trust regards principally the nominal ownership"). In the early part of this century, the word "use" was technically employed to refer to a passive trust, but less formally used as a synonym for the word "trust." See Bogert, *supra,* at 9 ("The words 'use' and 'trust' are employed as synonyms frequently by writers and judges"); 1 R. Baldes, Perry on Trusts and Trustees § 298 (7th ed. 1929) ("A *use,* a *trust,* and a *confidence* is one and the same thing..."); 1 Restatement of Trusts §§ 67-72 (Effect of Statute of Uses) (1935). The phrases "to the use of" or "for the use of" were frequently used in describing trust arrangements. See, *e.g., United States v. Bowling,* 256 U.S. 484, 486, 41 S.Ct. 561, 562, 65 L.Ed. 1054 (1921); *Blanset v. Cardin,* 256 U.S. 319, 321, 41 S.Ct. 519, 520, 65 L.Ed. 950 (1921); *Rand v. United States,* 249 U.S. 503, 508, 39 S.Ct. 359, 360, 63 L.Ed. 731 (1919). Given that this meaning of the word "use" precisely corresponded with Congress' purpose for amending the statute, it appears likely that in choosing the phrase "for the use of" Congress was referring to donations made in trust or in a similar legal arrangement.

*Davis*, 495 U.S. at 479–81. The Court observed the accepted meaning of "use" was synonymous with the term "trust," which was also consistent with the statutory language and Congress's apparent purpose in adopting the statute. *Id.* at 482–84. However, *Davis* is distinguishable. The United States Supreme Court in *Davis* was interpreting the Internal Revenue Code. The Court arrived at its conclusion by considering legislative history and the IRS's interpretation of that statute. Thus, the possible meaning of "use" as "trust" in a federal statute does not indicate that

11

this deed is ambiguous as to whether INWC holds the legal title to property for the beneficial use of the Boy Scouts.[1]

CEF and the Edwardses maintain that because they allege a charitable trust, broad interpretation standards apply. A charitable trust is "a trust created to benefit a specific charity, specific charities, or the general public rather than a private individual or entity." *Black's Law Dictionary* 1649 (9th ed. 2009). This Court has stated that "separation of legal and equitable titles are not so obvious in charitable trusts as in trusts of a noncharitable character." *In re Eggan's Estate*, 86 Idaho at 337, 386 P.2d at 568. CEF and the Edwardses argue the deed's language should be construed more broadly, given that "charitable trusts are favorites of the law" and courts "takes a sympathetic view of attempts to create charitable trusts" and use liberal rules of construction. 14 C.J.S. *Charities* § 8 (2011). However, we cannot apply broad interpretation standards when the deed unambiguously shows this was a fee simple conveyance. Because the phrase "for use of the Boy Scouts" is unambiguous and lacked any specificity as to how the Boy Scouts must use the property, the district court properly viewed the deed as a fee simple conveyance that allows alienation. Thus, we affirm the district court's grant of summary judgment on the grounds that the deed was unambiguous.

2. Trust law did not require the district court to admit extrinsic evidence.

CEF and the Edwardses argue courts must look beyond an absolute deed and consider extrinsic evidence to explain the donor's intent. CEF and the Edwardses cite *Garner v. Andreasen*, 96 Idaho 306, 527 P.2d 1264 (1974), and *Bengoechea v. Bengoechea*, 106 Idaho 188, 677 P.2d 501 (Ct. App. 1984) to support this argument. However, neither case requires this Court to look beyond the Fitze deed. In *Garner*, we found that an assignment of real property that "was, by its terms, absolute" actually had formed a trust. 96 Idaho at 308, 527 P.2d at 1266. However, all parties agreed the property was held in a trust arrangement, and the question was

---

[1] CEF and the Edwardses also state that hundreds of federal cases construe the words "for the use of" to mean a trust. However, they cite only one case, *Chew v. First Presbyterian Church of Wilmington, Del.*, 237 F. 219 (D. Del. 1916), and provide little analysis. There, the deed read: "to have and to hold 'for the use of a Meeting House, Burying Ground and such other pius uses forever' as they or a majority of them should 'at any time hereafter see most fitting and convenient, and to no other use, intent or purpose whatsoever.'" Chew, 237 F. at 223. The court found a charitable trust existed in perpetuity. *Id.* However, that deed specified that the purpose was for a meeting house, burying ground, or pious use, whereas the deed in this case did not describe a particular use and only gave use to the Boy Scouts of America. Also, the deed in *Chew* granted the use "forever" and allowed "no other use whatsoever." Again, here the deed did not limit the Boy Scouts' use of the land. Thus, *Chew* does not demonstrate that "for the use of" means there is a trust.

instead whether the district court erred in determining the continued existence of the trust. *Id.* Thus, *Garner* does not show this Court should always admit extrinsic evidence when one party alleges a trust. In *Bengoechea*, a grantor conveyed property to his son and daughter-in-law while telling his family that the conveyance only allowed them to sell the property if he needed money for medical care. 106 Idaho at 190, 677 P.2d at 503. The Court of Appeals found that while the deed was otherwise an absolute transfer, the trial court's findings supported the court imposing a resulting trust on the parties. *Id.* at 193, 677 P.2d at 506. Extrinsic evidence may be used to establish a resulting trust. *Id.* Thus, *Bengoechea* also is not instructive. In this case, because the deed's language showed an unambiguous intent to donate the property in fee simple to the Boy Scouts, we do not consider the Minutes as extrinsic evidence of Fitze's intent.

Also, CEF and the Edwardses argue that charitable trusts are implied when gifts are made to a recognized charitable organization. They describe this as treating charitable trusts with special care, which includes using extrinsic evidence to effectuate the donor's purpose. They cite *In re Eggan's Estate*, where we stated: "when a testator gives property to a city for use by the public as a park or a public square there appears to be no clear separation of legal and equitable title. However, the courts are inclined to say that the land is held in trust for use by the public." 86 Idaho at 337, 386 P.2d at 568–69. CEF and the Edwardses also cite other jurisdictions for the concept that a gift to a charitable organization implies a trust relationship.

However, this is not the law in Idaho. Indeed, in *In re Eggan's Estate* we held a deed formed a trust when that deed stated the donor's estate was to be used "only" to build a youth center in Moscow, Idaho, "to be used primarily for the recreation of the youth of this area." 86 Idaho at 331, 386 P.2d at 564. Here, the deed did not articulate that the property "only" be used for a certain purpose. This is unlike the deed in *In re Eggan's Estate* that declared property was only for a youth center primarily used for youth recreation. Instead, Fitze's deed unambiguously gave the property in fee simple to the Boy Scouts without specifying that the property must be used as a camp. Thus, we cannot say that giving property for use of the Boy Scouts implies a trust or requires that we consider extrinsic evidence to determine donor intent. Because the deed was unambiguous, the 1929 Minutes will not be considered. We therefore do not need to reach the issues of whether the Minutes would be prohibited by the statute of frauds or whether the district court properly denied class certification.

13

CEF and the Edwardses also argue the district court improperly dismissed their case with prejudice because the court should have granted their request for another amended complaint and additional discovery. However, their request for an amended complaint never mentioned the applicable civil rule as required under I.R.C.P. 7(b)(1). Also, the request for additional discovery related to standing, class certification, and other issues; CEF and the Edwardses never requested more discovery on the trust issue. The district court noted this in its decision on reconsideration, stating that "if the Plaintiffs were prepared to move for summary judgment on this claim, the Plaintiffs were surely in possession of enough information to defend a cross motion for summary judgment." Thus, the district court did not improperly dismiss the case with prejudice.

Even when making all reasonable inferences in favor of CEF and the Edwardses, we find the deed was unambiguous. Therefore, we affirm the district court's grant of summary judgment.

### V. CONCLUSION

We affirm the district court's grant of summary judgment. Costs to INWC.

Justices EISMANN, J. JONES and HORTON, **CONCUR.**

14