# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44855

MARIAN B. BAKER, TRUSTEE OF THE
MARIAN B. BAKER TRUST, dated May 12,
2013,

      Plaintiff-Respondent,

v.

KAL, LLC, an Idaho limited liability
company,

      Defendant-Counterclaimant-
      Cross Claimant-Appellant,

and

JOHN STADLER and VICKIE STADLER,
husband and wife,

      Defendants-Counterclaimants-
      Cross Claimants,

and

JOSE I. MELENDRERAS and
JACQUELINE Z. MELENDRERAS,
husband and wife,

      Defendants-Cross Defendants-
      Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, February 2018 Term**

**2018 Opinion No. 32**

**Filed: April 5, 2018**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the First Judicial District of the State
of Idaho, Kootenai County.  Hon. Lansing Haynes, District Judge.

The judgment of the district court is affirmed.

Robert E. Covington, III, Hayden, for appellant.

Jones, Gledhill, Fuhrman & Gourley, P.A., Boise for respondent Marian B.
Baker, Andrew E. Hawes argued.

James, Vernon and Weeks, P.A., Coeur d'Alene for respondent Melendreas.

_____

SCHROEDER, Justice *pro tem.*

## I. NATURE OF THE CASE

This is an easement dispute arising out of Kootenai County. The district court granted summary judgment in favor of Marian B. Baker, Trustee of the Marian B. Baker Trust ("Baker"), for an easement over a logging road ("Alexanna Lane") that crosses the property of KAL, LLC ("KAL"). Initially there were claims involving John and Vickie Stadler (the "Stadlers"), and Jose Melendreras and Jacqueline Diaz-Melendreras (the "Melendrerases"). However, the present appeal involves only the claims between Baker and KAL.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Timber-Land-AG, LLC ("Timberland") was the original owner of the parcels at issue, Tracts 7-10, which are adjacent to one another. Timberland conveyed Tracts 7 and 8 to the Melendrerases by a warranty deed in 1999. The 1999 deed had an attachment, Exhibit A, which contained easement language. Regarding Tract 7, which is also referred to as Parcel 1, the 1999 deed gave a legal description of the land, and provided:

> RESERVING THEREFROM that portion of the above described parcel which is described in an Ingress, Egress and Utilities Easement as more fully described in Exhibit "B" attached hereto and incorporated herein.

> FURTHER RESERVING THEREFROM a strip of land fifteen (15) feet in width paralleling the south boundary line of said Parcel 1 which shall serve as an easement for electric utilities over land and underground and the maintenance of same.

Regarding Tract 8, also referred to as Parcel 2, the 1999 deed gave a legal description of the land, and provided:

> RESERVING THEREFROM a strip of land sixty (60) feet in width paralleling the north boundary line of Parcel 2 which shall serve as an easement for ingress, egress and utilities.

> TOGETHER WITH a sixty foot easement of the purpose of ingress, egress and utilities along the north boundary line of Tract 9, legally described in Exhibit "C" and west of the Ingress, Egress and Utilities Easement described in Exhibit "B."

Exhibit B describes an Ingress, Egress, and Utilities Easement consisting of a strip of land 60 feet in width that commences in the southeast corner of Tract 12, and ends at the northern border of Tract 9. This easement is also referred to as Alexanna Lane. Exhibit C provides a legal description of the land in Tract 9. At the time the 1999 deed was executed, Timberland retained ownership of Tracts 9 and 10.

2

David White, a member of KAL, purchased Tract 9 (the "KAL Property") in 2002. The Stadlers purchased Tract 10 (the "Stadler Property") in 2003. The Melendrerases conveyed Tract 8 to Baker (the "Baker Property") in 2014. The Melendrerases retained ownership of Tract 7 (the "Melendreras Property").

## B. Procedural Background

In February of 2015 Baker filed a complaint to quiet title against KAL, the Stadlers and the Melendrerases to extinguish an easement on the Baker Property. The Stadlers answered Baker's complaint and asserted claims against Baker and the Melendrerases to quiet title and for common law trespass. The Stadlers noted that access to the Baker Property was intended to run through the Melendreras Property, not through the KAL Property or the Stadler Property.

Baker filed a motion for summary judgment with respect to Count I and Count II of the Stadlers' counterclaim, asserting that she was entitled to use Alexanna Lane to access her property because: (1) a statutory easement was created pursuant to Idaho Code section 55-603; (2) the 1999 deed intended to create and describe the easement; (3) an implied easement existed; (4) an easement by necessity existed because there was no other access to a public road; and (5) there was an easement by prescription. The Stadlers opposed Baker's motion for summary judgment, asserting that there was no easement created that allowed Baker to access Alexanna Lane.

Amidst these disputes KAL filed an answer and counterclaim to Baker's complaint, asserting that Baker had no legal right to travel across the KAL Property. KAL maintained that issues of material fact prevented summary judgment and alleged that the proper access to the Baker Property was through the Melendreras Property, not through the KAL Property. Baker replied, restating her position that there was no issue of material fact that Timberland intended to grant an easement to access the Baker Property through the Melendreras Property, the Stadler Property, and the KAL Property.

The district court granted summary judgment in favor of Baker, holding that the 1999 deed was ambiguous but that Timberland intended to grant an express easement to the Melendrerases to cross Tracts 5, 6, 11, 10, and 9, to access Tract 8, and to reserve itself an easement to cross Tracts 7 and 8, which it had just sold to the Melendrerases. The district court found that genuine issues of material fact existed regarding Baker's other theories of recovery:

3

implied easement; easement by necessity; easement by prescription; and easement by transfer pursuant to Idaho Code section 55-603. KAL appealed.

### III. ISSUES ON APPEAL

Initially there was an issue raised as to whether KAL's appeal was procedurally defective. That issue was resolved when this Court reinstated the appeal. The following issues remain.

1. Whether the district court erred when it held that the 1999 deed was ambiguous and interpreted the language in the 1999 deed to grant an express easement over Alexanna Lane.

2. Whether any party is entitled to attorney fees and costs on appeal.

### IV. STANDARD OF REVIEW

In reviewing grants of summary judgment, this Court uses the same standard as the district court. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment must be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In determining whether a genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law, this Court exercises free review. *Doe v. City of Elk River*, 144 Idaho 337, 338, 160 P.3d 1272, 1273 (2007).

When reviewing a district court's interpretation of a deed, the standard of review "depends on whether the instrument is ambiguous." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Whether a deed is ambiguous is a question of law, over which we exercise free review. *Id*. "Interpretation of an ambiguous document presents a question of fact, and we will defer to the findings of the trial court so long as those findings are supported by substantial and competent evidence." *Id*. However, interpretation of an unambiguous document is a question of law, and a matter of free review. *Id*.

*Ida–Therm, LLC v. Bedrock Geothermal, LLC*, 154 Idaho 6, 8, 293 P.3d 630, 632 (2012).

### V. ANALYSIS

**A.    The district court did not err when it determined that the 1999 deed was ambiguous.**

KAL argues that the district court erred when it held that the 1999 deed was ambiguous, asserting that the language of the 1999 deed supports a finding that Timberland reserved an easement for itself across the Melendrerases land, and that Timberland granted the Melendrerases an easement across the northern portion of Tract 9. KAL maintains that the use of the word "reserving" in the 1999 deed does not reserve an easement over land Timberland would

4

still own after selling Tracts 7 and 8 to the Melendrerases. Instead, KAL argues that Timberland intended to reserve for itself "that portion" of Alexanna Lane that crossed into Tract 7; that it intended to reserve an easement for itself over the northern boundary of Tract 8; and that the Melendrerases were granted an easement over the northern portion of Tract 9. According to KAL the district court compounded its error by adding a new easement to the 1999 deed after holding that the deed was ambiguous. KAL asserts that the district court impermissibly inserted new terms into the deed granting the Melendrerases an easement over the entirety of Alexanna Lane.

Baker responds that the district court properly determined that the 1999 deed was ambiguous, because Exhibit B described Alexanna Lane in its entirety, including land still owned by Timberland at the time, and Timberland could not reserve an easement across its own property. Further, Baker contends that the 1999 deed is ambiguous because Timberland granted the Melendrerases the right to traverse over the northern 60 feet of Tract 9 to access Tract 8 but failed to grant specific access to Alexanna Lane, which is necessary to access Tract 9.

An express easement may only be created by a written instrument. *Shultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976) (citing I.C. § 9–503).

> At a minimum, a valid express easement must identify the land subject to the easement and express the intent of the parties. *Hodgins v. Sales*, 139 Idaho 225, 233, 76 P.3d 969, 977 (2003) (citing *Nw. Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 181, 646 P.2d 422, 423 (1982)). Thus, while specific words are not required to create an express easement, the writing must make clear the parties' "intention to establish a servitude." *Coward*, 150 Idaho at 287, 246 P.3d at 396 (quoting *Capstar Radio Operating Co. v. Lawrence*, 143 Idaho 704, 707, 152 P.3d 575, 578 (2007) (*Capstar I* )).

*Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012).

"Whether a deed is ambiguous is a question of law, over which we exercise free review." *Ida–Therm, LLC v. Bedrock Geothermal, LLC*, 154 Idaho 6, 8, 293 P.3d 630, 632 (2012) (internal citation omitted). When this Court interprets a deed, the primary purpose is "to seek and give effect to the real intentions of the parties." *Machado,* 153 Idaho at 218, 280 P.3d at 721 (quoting *Porter v. Bassett*, 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008)). "If the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself and extrinsic evidence is not admissible." *Id.* (quoting *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006)). Conversely, when a court finds a document to be

5

ambiguous, the court may consider parol evidence to discover the drafter's intent. *Porter v. Bassett,* 146 Idaho 399, 404–05, 195 P.3d 1212, 1217–18 (2008).

To determine whether a deed is ambiguous, it must be reviewed as a whole. *Hoch v. Vance*, 155 Idaho 636, 639, 315 P.3d 824, 827 (2013) (citing *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003)). "Uncertainties should be treated as ambiguities; such ambiguities are subject to be cleared up by resort to the intention of the parties as gathered from the deed, from the circumstances attending and leading up to its execution, from the subject matter, and from the situation of the parties at the time." *Benninger*, 142 Idaho at 489, 129 P.3d at 1238 (citing *City of Kellogg v. Mission Mountain Interests*, 135 Idaho 239, 16 P.3d 915 (2000)).

The 1999 deed provides the legal description of two parcels: Tract 7 and Tract 8, and purports to create several easements pertaining to these tracts. Tract 7, or Parcel 1, is the Melendreras Property. Following a legal description of the property in Tract 7, the 1999 deed provides:

> RESERVING THEREFROM that portion of the above described parcel which is described in an Ingress, Egress and Utilities Easement as more fully described in Exhibit "B" attached hereto and incorporated herein.
>
> FURTHER RESERVING THEREFROM a strip of land fifteen (15) feet in width paralleling the south boundary line of said Parcel 1 which shall serve as an easement for electric utilities over land and underground and the maintenance of same.

Tract 8, or Parcel 2, is the property which subsequently became the Baker Property. Following a legal description of the property in Tract 8, the 1999 deed provides:

> RESERVING THEREFROM a strip of land sixty (60) feet in width paralleling the north boundary line of Parcel 2 which shall serve as an easement for ingress, egress and utilities.
>
> TOGETHER WITH a sixty foot easement of the purpose of ingress, egress and utilities along the north boundary line of Tract 9, legally described in Exhibit "C" and west of the Ingress, Egress and Utilities Easement described in Exhibit "B."

The attached Exhibit B describes Alexanna Lane in its entirety. Exhibit C is a legal description of the property in Tract 9.

The district court reviewed this easement language and determined that the 1999 deed was ambiguous. Specifically, the district court found that the language created an ambiguity because Timberland attempted to reserve itself an easement through land that it continued to own at the time of the conveyance. The district court determined that based on this ambiguity,

Timberland intended to grant an express easement to the Melendrerases to cross Tracts 5, 6, 11, 10 and 9 to reach Tract 8. The district court's holding linked the easements described in the 1999 deed together, entitling the Melendrerases, and subsequently Baker, to use Alexanna Lane to cross Tracts 9 and 10 to reach the Baker Property.

There is a lack of clarity in the easement language. Discerning the intent of that language is not apparent from a reading of the easement provisions. The district court did not err in determining that the easement language was ambiguous and that the intent of the parties could not be determined from that language. Consequently the district court looked at extrinsic information to determine the meaning.

Resolution of the meaning of the easement language is an issue for the district court to determine. *Kolouch v. Kramer*, 120 Idaho 65, 69, 813 P.2d 876, 880 (1991) ("The question of whether a particular use of an easement is reasonable and commensurate with the intention of the parties when the easement was granted is generally a question of fact for the trial court and its findings will not be disturbed if supported by substantial and competent evidence."). As such the district court could draw inferences from the record submitted to it and make a determination of the meaning of that language in the absence of disputed material facts or issues that would require a determination of credibility. The evidence in the record demonstrating Timberland's intent at the time of 1999 deed is limited, largely due to the fact that Mr. Mortenson, principal of Timberland, is deceased; KAL did not purchase Tract 9 until 2002; and, the Stadlers did not purchase Tract 10 until 2003. However, Mr. Melendreras testified to the following facts regarding the circumstances at the time of the 1999 deed:

> JOSE I. MELENDRERAS, being first duly sworn upon oath, deposes and says:
>
> . . . .
>
> 4.      As part of obtaining our loan to purchase Tracts 7 and 8, we were required to obtain a separate access for Tract 8 using the Easements [Alexanna Lane and the Northern 60 feet of Tract 9 between Tract 8 and Alexanna Lane]". . . .
>
> 5.      . . . I witnessed a surveyor stake out the Easements and place survey pins along the Easements' boundaries. For some unknown reason, the survey was not recorded with the Kootenai County Recorder. However, the descriptions of the Easements were included in the Warranty Deed from Timber-Land-AG L.L.C. to my wife and me. The pins staked by the surveyor in 1999 marking the Easements are still in place today.

. . . .

7.      . . . . At the time of the conveyance of Tract 8 from Timber-Land-AG L.L.C., it was apparent from my observations that the Easements had been continuously used by Timber-Land-AG L.L.C. for several months up to the time of conveyance. . .

8.      Timber-Land-AG L.L.C. (Mr. Mortensen's company) continued using the Easements for approximately six months after we closed on the purchase of Tracts 7 and 8.

KAL conceded that there were no facts to dispute this testimony. Therefore, the district court was entitled to make inferences and determinations from the record before it and determine the meaning of the easement language. It did not err in doing so. Accordingly, the district court's holding that Timberland intended to grant an express easement to access Tract 8 is affirmed because it is supported by substantial and competent evidence.

**B.      Baker is not entitled to attorney fees on appeal.**

Baker requests attorney fees on appeal on two grounds, both of which rely on Idaho Code section 12-121. Attorney fees are permissible on appeal to the prevailing party in a civil action. *Anderson v. Goodliffe*, 140 Idaho 446, 450, 95 P.3d 64, 68 (2004) (citing I.C. § 12-121). "The Court will award fees to a prevailing party under Idaho Code section 12-121 when the Court believes that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Thornton v. Pandrea*, 161 Idaho 301, 320, 385 P.3d 856, 875 (2016) (internal citation omitted).

KAL did not pursue this appeal frivolously, unreasonably or without foundation. It made reasoned arguments in a case with a complex and sometimes confusing history. Consequently, attorney fees pursuant to Idaho Code section 12-121 are not appropriate.

Costs are awarded to the prevailing party on appeal "as a matter of course." I.A.R. 40

## VI. CONCLUSION

The judgment of the district court is affirmed.  Baker is awarded costs.  No attorney fees are allowed.

Chief Justice BURDICK, Justices BRODY and BEVAN, and Justice *pro tem* GRATTON, CONCUR.

8