**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 42333**

| | | |
|---|---|---|
| MARY E. PANDREA, a single person, individually and as Trustee of the Kari A. Clark and Mary E. Pandrea Revocable Trust u/a dated April 9, 2002, | ) ) ) ) | Boise, December 2015 Term |
| | ) | |
| Plaintiff-Counterdefendant-Appellant, | ) | 2016 Opinion No. 39 |
| | ) | |
| v. | ) | Filed: March 25, 2016 |
| | ) | |
| KENNETH J. BARRETT and DEANNA L. BARRETT, husband and wife, | ) ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Counterclaimants-Respondents. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John P. Luster, District Judge.

The judgment of the District Court is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondents.

Mary E. Pandrea, Sandpoint, appellant *pro se*.

Kenneth Barrett and Deanna Barrett, Birmingham, MI, respondents *pro se.*

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Mary E. Pandrea appeals a district court decision out of Bonner County regarding the partition of approximately twenty-three acres of real property owned jointly by Pandrea and her sister. Pandrea asserts that the partition greatly prejudiced her and thus that the district court improperly partitioned the property in kind rather than by sale. She appeals several district court decisions denying motions she made for reconsideration and to amend her complaint. The orders and judgment of the district court are affirmed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1

Harry and Edith Clark owned approximately 250 to 300 acres of land in Bonner County. The parties in this case were two of their eight children, who grew up on the land in the 1940s. Before Harry Clark died, he and Edith set up a trust and placed the land in it. After Harry Clark's death, the land in the trust was subdivided so the parcels could be sold to support Edith. In 1981, Mary Pandrea, the appellant in this matter ("Pandrea"), purchased one parcel comprising approximately five acres and including a shop, cabin, and other improvements ("Parcel 1"). She then gave her sister, Kari Clark ("Clark"), a one-half undivided interest in that parcel as a tenant in common with her. *Id.* About ten years later, Clark purchased an adjoining parcel, comprising approximately fifteen acres ("Parcel 2"); and Clark then purchased another parcel contiguous to Parcel 2 comprising a little over five acres (the "Clark Parcel"). Clark then gave Pandrea a one-half undivided interest in Parcel 2 as a tenant in common with Clark. In 2002, Clark and Pandrea placed Parcels 1 and 2 into the Kari A. Clark and Mary E. Pandrea Revocable Trust (the "Trust"), naming themselves as co-trustees. Clark also placed the Clark Parcel into the Trust. The sisters' relationship then deteriorated.

On June 21, 2010, Clark executed quitclaim deeds on behalf of the trust which conveyed Parcel 1 from the trust to Clark and Pandrea (each obtaining a one-half undivided interest as tenants in common), conveyed Parcel 2 solely to Clark, and conveyed the Clark parcel solely to Clark. Approximately one month later, the Trust was dissolved.

On May 11, 2011, Pandrea filed a complaint seeking a partition of and accounting for the property. After Pandrea filed her complaint, Clark executed another deed which corrected the transfer of Parcel 2 to give Clark and Pandrea each a one-half undivided interest in it as tenants in common.[1] So by the time of trial in July of 2011, both Parcels 1 and 2 were owned jointly by Clark and Pandrea, each possessing a one-half undivided interest as tenants in common with regard to each parcel.

Before trial, Pandrea amended her complaint, and the amended complaint sought partition of the land by sale, claiming that physical partition would result in prejudice; and the complaint further sought that Clark account for the proceeds of the Trust, having unilaterally controlled Trust property. Clark filed a counterclaim against Pandrea, also seeking an accounting, but asking for partition in kind rather than by sale. At some point during the litigation, Pandrea changed her position and joined Clark in requesting partition in kind and

---

[1] Clark claims that the transfer of Parcel 2 solely to her was a scrivener's error.

opposing sale of the Parcels. Neither party disputed that Pandrea had expended funds to maintain and improve the Parcels, so the only monetary issues addressed at trial were the amount of reimbursement to which Pandrea was entitled and value of the improvements she made.

The district court found that the Parcels' combined value was between $100,000 and $130,000. It further found that Pandrea expended $14,749.12 in improving and maintaining Parcels 1 and 2 during the course of her co-tenancy. However, the court denied more than $400,000 of Pandrea's other alleged expenses because either there was insufficient evidence to find that they were made to maintain or improve the Parcels or for the Trust's benefit, or they were incurred for the purpose of the instant litigation and thus deemed costs defined by Rule 54(d). There was also a dispute regarding Pandrea's remodel of a log cabin on Parcel 2. The district court resolved it by finding that $18,380.63 expended by Pandrea to remodel the cabin did in fact improve it. Finally, the court determined that Clark expended $312.66 toward the benefit of the Parcels.

With the above facts, the district court went on to partition the property. It followed Idaho Code section 6-501, noting that it "allows for the partition of property, and provides that a forced sale of the property is only appropriate if another partition cannot be made without great prejudice to the owners." It concluded that both parties sought to avoid a forced sale of the properties because both wanted to retain their family property. The court ultimately found that the most equitable way to partition the property was into two parcels, one comprising nine acres and adjacent to land already owned by Clark and the other comprising eleven acres including the cabin. Clark would receive the former, and Pandrea the latter. Clark was also to receive an easement benefitting her parcel and burdening Pandrea's parcel. The court found that its partition "account[ed] for all the expenditures made by Pandrea and Clark" and that therefore "no additional monies must be paid." The partition had been proposed by Pandrea and ran generally north-south. The court formalized its order in a written decision titled Decision Re: Court Trial ("Partition Order").

The court then ordered Pandrea to present for its approval a legal description of the new parcels consistent with its order, noting that "access to the nine acres and the Clark parcel shall be by easement." Pandrea then presented a description, but Clark objected, claiming that, contrary to the court's order, Pandrea had described the new parcels such that, rather than a dividing line running north to south, "she has allocated to herself all of the bottom-land and all

hundreds of feet of waterfront associated with the historical Parcels[.]" Clark claimed that all of the valuable, useful, or desirable areas of land were allocated to Pandrea, leaving Clark with only the steep terrain and cliffs. Clark requested a hearing for the court to settle the matter. At the hearing, the court noted that no party was asking it to reconsider its decision, but rather to draw the partition line consistently with its judgment. It found that the "proposed record of survey submitted for judgment by Pandrea varied significantly from the proposal adopted by the [c]ourt." The variations were that Pandrea's presented legal description did not include an access easement, but rather suggested access by a logging road coming from a county road, and also that the proposed description included no river frontage when that adopted by the court included a reasonable amount of such frontage. Accordingly, the court ordered that Clark now prepare a new survey and legal description more consistent with its order and submit it for the court's approval.

Clark's surveyor discovered discrepancies between what the court and parties believed the parties owned. He found that a corner of the land that was to be allocated to Clark was not owned by either party, and that Pandrea and Clark owned more land than previously thought. Clark prepared a new legal description of the land division reflecting the new survey but still using the court's 11:9 ratio to divide it.

In April of 2013, Pandrea filed a motion asking the court to reconsider its Partition Order.[2] In it, Pandrea raised issues regarding quieting title to both parcels in her name, certain breaches of fiduciary duty by Clark, and slander of title. The court first considered whether the motion to reconsider was properly brought. It found that the Partition Order was not in fact a final judgment and as such a motion to reconsider the interlocutory order was proper. However, the court also found that while a motion to reconsider can be based on new evidence, the new issues described above "were not the issues that were litigated or set forth in the original complaint and those are not issues that can properly be considered by this Court on a motion for reconsideration." The court also considered and rejected claims by Pandrea that the easement burdening her parcel was improper and that the proposed partition may violate county zoning laws. The court ordered that Clark prepare another survey consistent with its order but reflecting the new understanding of the property size.

_____

[2] At some point around this time, Pandrea's relationship with her attorney deteriorated and she elected to represent herself. This dispute between Pandrea and her attorney does not have bearing on the present action.

4

On August 30, 2013, Pandrea moved to amend her complaint to add new defendants. Around the same time, a previously uninvolved neighbor, John Thornton (Thornton), moved to intervene in the matter. He alleged that the easement the court awarded to Clark could not be accessed without also crossing his property, which he did not authorize, and thus that the easement was improper. Thornton's motion was denied, but Pandrea adopted his argument regarding the easement. The court noted that the motion to file an amended complaint amounted to an attempt to "broaden the scope of the existing lawsuit to add claims, revise original claims, and to add additional defendants." Part of these new claims was that Clark had improperly granted a lien on the jointly held property to Kenneth and Deanna Barrett—the respondents in this matter ("Respondents"). The court denied Pandrea's motion to amend her complaint, noting that I.R.C.P. 15 allows amendments to which the other party objects only with leave of the court when justice so requires. The court recognized that whether or not to grant the motion to amend was within its discretion, but suggested potential bad faith or dilatory conduct on Pandrea's part, and further noted the significant prejudice to Clark should the motion be granted.

Clark then had a survey of the Parcels conducted and prepared legal descriptions of the Parcels and the easement in accordance with the court's order in its decision on Pandrea's motion to reconsider. At a hearing dated January 17, 2014, the district court accepted these legal descriptions as consistent with its judgment. During that hearing, the court again considered and rejected Pandrea's arguments that the easement was improper. On January 24, 2014, the court issued its Revised Judgment and Decree of Partition (the "1/24/14 Judgment"). The 1/24/14 Judgment granted Pandrea and Clark respectively full undivided ownership in one each of the new parcels: Pandrea was granted 12.739 acres of property on generally the South portion of the land ("Parcel A"); and Clark was granted 10.423 acres of property on generally the North portion of the land ("Parcel B"), along with an easement "for ingress and egress" benefitting Parcel B and burdening Parcel A.

On February 7, 2014, Pandrea filed a motion requesting the court reconsider the 1/24/14 Judgment. In the related supporting affidavit, she again noted her objection to the easement granted to Clark. She claimed the easement negatively impacted the value of her Parcel, which caused her significant prejudice. According to Pandrea, this meant that the partition implemented by the court is in violation of Idaho Code section 6-512, which requires partition by sale in the

face of great prejudice. The court considered this motion a return to Pandrea's position at the very outset of the case, before she agreed to the partition in kind:

> Initially Pandrea sought a court-ordered sale of the jointly owned property. At trial she agreed with Clark that the property should be split and provided a proposed partition that the Court largely adopted. She refused to prepare the decree as directed by the Court. A series of legal challenges to the Court's decision ensued, primarily focused on her objection to the easement. The Court rejected an earlier post-trial effort to amend her complaint and pursue claims that were not included in her initial complaint. Now, Pandrea wants to return to her original stance that a partition of the property cannot be made without great prejudice to the owners. There comes a time for finality in a trial court's ruling and for an aggrieved party to pursue an appeal if they so desire.

The court denied her motion substantively, but also recognized that it was procedurally defective:

> Rule 11(a)(2)(B) provides for review of an interlocutory order, not for reconsideration of a final judgment. While this court could properly consider the motion as a motion to amend the judgment under Rule 59(e) or a motion for relief from a final judgment under Rule 60(b) a showing of good cause must be made to justify consideration of new evidence. *Lowe v. Lynn*, 103 Idaho 259, 646 P.2d 1030 (Ct. App. 1982). The Court recognizes its discretion to grant relief from a final judgment under certain provisions of the civil rules, however, this court is not satisfied that a basis for that relief has been established.

Pandrea timely filed her notice of appeal. Twice this Court conditionally dismissed Pandrea's appeal due to issues regarding the legibility of certain exhibits. Ultimately this Court accepted Pandrea's appeal. On November 25, 2014, the Barretts filed a notice of substitution, taking the place of Clark. In the time between the trial and the appeal, the Barretts had purchased from Clark the property she received in the partition (Parcel B), and Clark assigned this action to them. This Court ordered the Barretts be substituted for Clark.

### III. ISSUES ON APPEAL

1. Whether the district court erred in denying Pandrea's motion for reconsideration of its Partition Order.

2. Whether the district court abused its discretion by denying Pandrea's motion for leave to amend her complaint to add defendants, additional and novel claims, and to revise original claims.

3. Whether the district court abused its discretion by denying Pandrea's motion to reconsider its Revised Judgment and Decree of Partition that was in actuality a motion to amend the judgment or for relief from it.

### IV. STANDARD OF REVIEW

6

The inquiry upon reviewing a trial court's order partitioning real property of tenants in common is: "[D]id the court act erroneously upon the facts presented?" *Richardson v. Ruddy*, 15 Idaho 488, 495, 98 P. 842, 844 (1908). "When a district court decides a motion to reconsider, 'the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered.'" *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)). "When we review a trial court's decision to grant or deny a motion for reconsideration, we use the same standard of review the lower court used in deciding the motion for reconsideration." *Id.* Therefore, this Court reviews a district court's denial of a motion to reconsider its partition of real property for clear error. "[C]lear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence." *State Dep't of Health & Welfare v. Roe*, 139 Idaho 18, 21, 72 P.3d 858, 861 (2003).

On the other hand, a "Rule 59(e) motion to amend a judgment is addressed to the discretion of the court. An order denying a motion made under Rule 59(e) to alter or amend a judgment is appealable, but only on the question of whether there has been a manifest abuse of discretion." *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008) (quoting *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990)).

A district court's decision regarding a motion to amend the complaint once trial has begun is "necessarily left to the sound discretion of the trial judge, and in the absence of a showing of the abuse of such discretion the ruling of the trial court should not be set aside on appeal." *Gates v. Pickett & Nelson Const. Co.*, 91 Idaho 836, 841, 432 P.2d 780, 785 (1967) (*overruled on other grounds*, *Smith v. State*, 93 Idaho 795, 473 P.2d 937, 942 (1970)). To determine whether a district court abused its discretion, this Court uses a three-factor test. *Fox v. Mountain W. Elec., Inc.*, 137 Idaho 703, 711, 52 P.3d 848, 856 (2002).

> The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Id.*

Finally, this court exercises free review over questions of law such as the interpretation of the rules governing motions to reconsider. *Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 103, 294 P.3d 1111, 1115 (2013).

## V. ANALYSIS

**A.      The district court's Partition Order was not clearly erroneous, and its decision on Plaintiff's motion for reconsideration of same was similarly not clearly erroneous.**

> *1.      The district court's Partition Order was not clearly erroneous because it was supported by substantial and competent evidence.*

In the district court's Partition Order, it noted that both parties argued that partition could be made in kind rather than by sale without prejudicing either Pandrea or Clark. The court carefully considered the parties' arguments regarding how the property should be divided. Clark advocated for a division that would essentially put the parties in the same position they were in before forming the Trust. The district court found that "this resolution does not resolve the issue of reimbursement to Pandrea for the expenses she incurred improving and maintaining the [property]."

Instead, the district court found that Pandrea's proposal—to give Clark nine acres contiguous to the Clark Parcel, while giving Pandrea the remaining eleven acres including the log home and improvements she made but burdened by an access easement for Clark—was the most equitable. This conclusion was supported by substantial and competent evidence. Pandrea began with only five acres, but had expended tens of thousands of dollars to improve the property, while Clark had expended only hundreds, and Pandrea had to pay the property tax. The district court did not act erroneously on the facts presented, and therefore its Partition Order was not error and is affirmed.

> *2.      The district court's order denying Pandrea's re-filed motion to reconsider the court's Partition Order was not clearly erroneous because it was supported by substantial and competent evidence.*

Pandrea asserts that the district court erroneously denied her motion for it to reconsider its Partition Order. The crux of Pandrea's argument regarding this assertion of error revolves around Clark's encumbrance of the whole property (rather than merely of her own one-half undivided interest as a tenant in common). Clark granted Respondents a lien on the entire property in order to secure a $10,000 loan to fund her defense in this action. That was modified so that the lien was only on Clark's one-half undivided interest. Pandrea alleged this amounted to

slander of title, for which the remedy was to quiet title to the entire Property in her name. The district court noted the strange nature of the entirely novel claim now brought by Pandrea:

> Ms. Pandrea is asking that she get all of the property. That wasn't even consistent with the original pleadings. I'm not even sure how the Court would even begin to consider that kind of a motion for reconsideration because that is asking the Court basically to redesign a lawsuit that was filed, that was litigated and was decided.

The court went on to explain: "A motion to reconsider certainly can consider new evidence, but it doesn't really change the four corners of the lawsuit that was originally brought in front of the Court and that seems to be what a lot of the argument is doing." It continued to note that any of Pandrea's arguments regarding Clark's misconduct as a trustee were irrelevant because by the time the Pandrea filed the case, the Trust was dissolved and Pandrea herself noted that she and Clark were co-tenants rather than co-trustees.

Nevertheless, the court considered Pandrea's arguments regarding whether the lien granted to Respondents by Clark had any bearing on its initial Partition Order, and thus on the motion to reconsider that decision. Clark responded that the lien-granting was innocent error; that she attempted to only encumber her one-half undivided interest in the property, which there is no disagreement would have been proper. Further, Clark claimed that she corrected the error resulting in no prejudice: Respondents relinquished their interest to any security in Pandrea's one-half undivided interest in the property. Finally, Clark asserted this motion amounted to an action for slander of title which was never plead and is thus improper. Ultimately, the district court concluded that as to any alleged slander of title or breach of fiduciary duty by Clark, "those issues were not the issues that were litigated or set forth in the original complaint and those are not issues that can properly be considered by this Court on a motion for reconsideration." The court noted the prejudice to Clark who never had a chance to address or present evidence regarding any of these claims.

Pandrea argues on appeal that she was unaware of the slander of title up until that point and the new discovery justifies the action's consideration. Pandrea's brief on appeal contains two legal arguments to that effect[3]: (1) Idaho Code section 6-507—which mandates that defendants must set forth in their answers the nature and extent of the respective interests in the property— meant that the slander of title would affect her final rights after the partition; and (2) *Porter v.*

---

[3] The rest of this section of her brief is devoted to attempting to establish slander of title. Because the district court did not consider the slander of title claim, it would not be appropriate for this Court to consider it substantively.

*Bassett*, 146 Idaho 399, 406, 195 P.3d 1212, 1219 (2008), stands for the proposition that "damages for slander of title were appropriate even after the improper conveyance had been corrected." Both of Pandrea's legal arguments are unavailing, and her novel claim brought in a motion to reconsider is improper for two additional reasons.

First, neither legal argument made by Pandrea can provide her with the relief she seeks. Idaho Code section 6-507 is unavailing to Pandrea because it only requires disclosure of liens on the property to be partitioned held by the defendant, rather than those liens that encumber the defendant's interest. Idaho Code section 6-507 has not yet been reviewed by this Court, but its language is unambiguous. It provides:

> The defendants who have been personally served with the summons and a copy of the complaint, or who have appeared without such service, must set forth in their answers fully and particularly, the origin, nature and extent of their respective interests in the property, and if such defendants claim a lien on the property by mortgage, judgment or otherwise, they must state the original amount and date of the same, and the sum remaining due thereon, also whether the same has been secured in any other way or not; and if secured, the nature and extent of such security, or they are deemed to have waived their right to such lien.

I.C. § 6-507. This statute contains nothing requiring setting forth liens against the defendant's interest. The language "and if secured, the nature and extent of such security" could mislead one to believe it requires such disclosure, but that provision refers to any security that is on "same," which in turn refers back to any lien claimed by the defendant on the property. Therefore, the statute requires setting forth the nature of any security interest that someone holds which secures a lien held by the defendant on the property, rather than a lien held by another on the defendant's interest in the property.

But even were this statute read to require the disclosure Pandrea argues for, it still does not provide her with relief. The relief for a violation of this section is that the defendants "are deemed to have waived their right to [the undisclosed] lien." *Id.* This language is further evidence that this statute does not require disclosure of other liens on the property because it would not make sense for the defendants to be able to waive a lien not held by them. Further, even if Clark could waive the lien supposedly held by Respondents, that would not make any difference, as Respondents already waived any potential lien covering Pandrea's interest in the property. Therefore, this statute is unavailing for Pandrea.

*Porter* is similarly unavailing for Pandrea. In that case, the plaintiffs filed an action for slander of title, but the district court dismissed that claim before the trial. *Porter v. Bassett*, 146

Idaho 399, 406, 195 P.3d 1212, 1219 (2008). This Court found that the plaintiffs "adequately pled a cause of action for slander of title, and [defendants] did not raise any objections to [plaintiffs'] slander of title claim in their cross-motion for summary judgment; therefore, [plaintiffs] are entitled to a trial upon the issue." *Id.* What is noteworthy about that case and distinguishable from the instant case is that the plaintiffs properly pled slander of title and were denied the right to litigate it at trial. Here, not only did Pandrea fail to adequately plead slander of title, but the case had already proceeded through litigation. Nothing about *Porter* means that Pandrea should be allowed to bring this new claim at the late stage at which it was brought.

Beyond presenting no adequate legal basis to support her argument, Pandrea is not allowed to assert her novel claim for two additional reasons: (1) the plain language of the rule governing motions to reconsider bars it; and (2) it would result in undue prejudice to Clark, whose position Respondents have assumed.

The plain language of the rules governing motions to reconsider indicates that novel claims are not allowed. Idaho Rule of Civil Procedure 11 contemplates motions to reconsider, and it provides in pertinent part:

> A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any order of the trial court made after entry of final judgment may be filed within fourteen (14) days from the entry of such order; provided, there shall be no motion for reconsideration of an order of the trial court entered on any motion filed under Rules 50(a), 52(b), 55(c), 59(a), 59(e), 59.1, 60(a), or 60(b).

The rule plainly allows reconsideration of an interlocutory order. It plainly does not consider deciding an entirely new claim not previously raised.[4] Allowing Pandrea to add a new claim of which Clark was not on notice after the trial already occurred would be greatly prejudicial to Clark who did not have a chance to prepare to defend such a claim. It was therefore not clearly erroneous for the district court to deny Pandrea's motion to reconsider which added new causes of action.

**B.      The district court did not abuse its discretion by denying Pandrea's motion to amend her complaint to add parties and new causes of action.**

---

[4] Indeed, if the rule operated as Pandrea desires, there would be no reason for the rules which allow a plaintiff to amend his or her complaint to add claims in limited circumstances. If a plaintiff could merely make a motion to reconsider which includes a new claim, the rules allowing for additional supplementary claims would be superfluous. "[T]he Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011).

11

Pandrea claims that the district court erroneously denied her motion to amend her complaint. The district court found that Pandrea had not established a basis for the relief she sought. Pandrea alleges that the district court did not find one of: specific prejudice to Clark; bad faith by Pandrea; or futility of the amendment. Therefore, she claims, a Ninth Circuit case requires reversal of the denial. The extra-jurisdictional case cited to by Pandrea does not control the decision here, but even if it were controlling, it does not mandate reversal because the district court did make the necessary findings. Second, under the proper test for this Court to review the denial of the motion to amend (abuse of discretion), the district court's denial survives scrutiny.

First, the Ninth Circuit case cited to by Pandrea does not control. Pandrea cites *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), for the proposition that the district court's belief that her motion was untimely as well as its alleged failure to identify specific prejudices or clear futility or bad faith warrants reversal of its denial of her motion to amend. Putting aside the fact that that case is non-controlling, in fact her assertion is exactly contrary to the district court's carefully considered conclusion. The district court did not deny her motion solely based on untimeliness as Pandrea claims. While it did note that it considered her motion untimely, it also noted that "[t]he court recognizes that Rule 15(a) does not restrict a movant to a specific time frame within which to file a motion to amend[.]" It went on to consider the merits of her claim.

As to the merits of her motion, the district court made specific findings exactly opposite to what Pandrea represents in her brief: rather than fail to find specific prejudice, the court found that the "important focus . . . is upon the prejudice suffered by Clark [who] is in her seventies and has limited financial resources." It went on to note specifically how those things coupled with added delay would prejudice Clark. Second, rather than failing to find bad faith on Pandrea's part, the court specifically referenced and quoted a decision by this Court dealing with denying motions to amend for bad faith or dilatory conduct, and several times characterized Pandrea's actions as "an effort to simply delay the entry of the judgment of partition." Finally, while not expressly labelling the new claim clearly futile, the district court did question its validity. In any case, the district court's analysis met the standard articulated in *Bowles*. In that case,

> the district court did not make any specific findings of prejudice, bad faith, or futility. The court merely explained that it denied The Plans' motion because they knew that Ms. Reade was acting in her capacity as trustee of the Robert B. Reade Trust. This explanation, however, does not satisfy the district court's duty to make

12

findings supported by the record showing that the motion was prejudicial to the defendant, was made in bad faith, or was futile.

*Bowles*, 198 F.3d at 758. In this case though, the district court made specific findings supported by the record at least as to two of the three independent grounds for denying a motion to amend identified by the Ninth Circuit.

Additionally, under the precedent laid out by this Court, the district court clearly did not abuse its discretion in denying Pandrea's motion to amend. This Court has made it clear that while a motion to amend a complaint should be liberally granted, that liberality may be constrained in the face of bad faith or dilatory conduct by the moving party, prejudice to the opposing party, or the claim to be added being invalid. *See Smith v. Great Basin Grain Co.*, 98 Idaho 266, 272, 561 P.2d 1299, 1305 (1977); *Hessing v. Drake*, 90 Idaho 67, 71–72, 408 P.2d 180, 182 (1965); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

In the present case the district court did not abuse its discretion. First, it correctly perceived the issue as one of discretion. It noted that "[i]t is within the district court's sound discretion to decide whether to allow a party to amend its complaint after a responsive pleading has been served." Next, it acted within the bounds of its discretion and consistently with the applicable legal principles. It noted the proper rule governing the proceeding, and identified limitations therein laid out by this Court and performed its analysis accordingly. Finally, it acted within an exercise of reason, denying the motion to amend for many permissible reasons as are described above in more detail. Therefore, the district court did not abuse its discretion by denying Pandrea's motion to amend her complaint and that order is affirmed.

C.     **The district court did not abuse its discretion by denying Pandrea's motion to reconsider its Revised Judgment and Decree of Partition.**

Pandrea claims that the district court erred by not reconsidering its Revised Judgment and Decree of Partition. Pandrea's sole argument regarding this issue is that the district court should have granted her Motion for Reconsideration of Final Judgment and Decree of Partition and Clarification because the court's final partition resulted in great prejudice to her in violation of Idaho Code section 6-501. She presented new surveys and affidavits purporting to show that the easement granted to Clark greatly diminished the value of her new Parcel. She claims the prejudice to her from the diminished value means the partition the court ultimately ordered violated Idaho Code section 6-501 which states that an action may be brought "for a sale of such

13

property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." I.C. § 6-501. She also claims it violates Idaho Code section 6-512 which states that a court may partition by sale if another partition would result in great prejudice and otherwise that the court "must order a partition according to the respective rights of the parties as ascertained by the court." I.C. § 6-512.

Pandrea's argument on appeal fails. Pandrea did not bring her motion under Rule 59(e) or 60(b), but rather under 11(a)(2)(B) as a motion for reconsideration of an interlocutory order. This was procedurally improper as the judgment was a final judgment rather than an interlocutory order. However the trial court recognized that it should have been brought under 59(e) or 60(b) and analyzed it accordingly. This was the correct thing to do. *See Obray v. Mitchell*, 98 Idaho 533, 538, 567 P.2d 1284, 1289 (1977) ("The Idaho Rules of Civil Procedure do not provide for a petition to reconsider a memorandum decision. As such, the trial court correctly treated appellant's petition as a motion to alter or amend judgment pursuant to I.R.C.P. 59(e)."). Pandrea has two factual arguments as to why the district court should have granted her motion. First, she argues the new appraisal shows her new parcel is worth significantly less due to the easement. Second, she argues that the Bonner County building codes mean the easement prevents her from building on her parcel adjacent to the easement further diminishing her parcel's value.

The trial court did not abuse its discretion by denying either a Rule 59(e) motion to amend final judgment, or a Rule 60(b) motion for relief from final judgment. As to the Rule 59(e) motion, the court acted within its discretion by holding there was insufficient grounds to grant such a motion.

The court recognized its discretion. It then acted within the bounds of its discretion according to the law. The court was aware of the size of the easement relative to the size of Pandrea's parcel when it entered its final judgment. It had considered these factors in granting the easement. Rather than a situation where both parties were to receive equivalent parcels, the district court here partitioned the parcels equitably based on unequal starting parcel sizes and unequal financial contributions. It is accurate that the easement did diminish the value of Pandrea's parcel, but the district court clearly recognized this and noted that it had, on several previous occasions, considered the issue of the easement. Further, the court had available to it Pandrea's claim that the "Bonner County Planning and Building [office] verified that Pandrea's new Parcel 1 would be burdened as the second easement did not comply with the setback

14

requirements" which would prevent a building permit. That claim is supported in the record only by an affidavit from Pandrea herself. The only statement in the record from that office is that it declined to comment until litigation was over. It was not outside of the court's discretion to find these claims unworthy of granting the Rule 59(e) motion.

Finally, the district court reached its conclusion by an exercise of reason. As discussed above, it considered all ramifications to the values of the new parcels. Ultimately, it determined that the case was best served by avoiding even more delay, the case having been filed nearly three years prior. There is simply no reason to conclude the district court abused its discretion by denying a Rule 59(e) motion.

Similarly, the district court did not abuse its discretion by denying a Rule 60(b) motion for relief from final judgment. "A Rule 60(b) motion permits a district court to grant relief from a judgment based on mistake, or newly discovered evidence, or fraud, or misrepresentation, or misconduct, or void or satisfied judgments if filed within six months." *First Bank & Trust of Idaho v. Parker Bros.*, 112 Idaho 30, 32, 730 P.2d 950, 952 (1986). The rule "requires a showing of good cause and specifies particular grounds upon which relief may be afforded." *Id.* The moving party must establish the good cause and that one of the specific grounds applies. *Id.* Pandrea claims that the good cause is the great prejudice to her which resulted from the judgment. She has not specified into which grounds for 60(b) relief her argument fits. Because she has not shown newly discovered evidence,[5] fraud, a void judgment, or a satisfied or released judgment, Pandrea's claim could only fall into the mistake category. When a party moves for relief from a court's determination regarding distributions of property on the grounds of mistake, "such mistake must be factual rather than legal." *Puphal v. Puphal*, 105 Idaho 302, 306, 669 P.2d 191, 195 (1983). There is nothing in this case to suggest the court made any factual errors. It does not bear repeating the analysis for why the district court did not abuse its discretion because it is precisely the same as that performed under the Rule 59(e) analysis above. Because the district court recognized its discretion, acted within the bounds of that discretion, and exercised reason, the district court did not err by denying a Rule 60(b) motion for relief from judgment. Accordingly, that order is affirmed.

---

[5] There were the alleged newly discovered issues from Bonner County, but as discussed above, the district court did not err by not considering those.

## VI. CONCLUSION

The orders and judgment of the district court are affirmed. Costs to respondents.

Chief Justice J. JONES, Justices EISMANN, BURDICK and HORTON CONCUR.