# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49633

FARMS, LLC, an Idaho Limited
Liability company,

   Plaintiff-Respondent-
   Cross-Appellant

v.

RALPH D. ISOM and PAULA ISOM,
a married couple,

   Defendants-Appellants-
   Cross-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Rexburg, June 2023 Term

Opinion Filed: October 26, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The district court's judgment is <u>affirmed in part, vacated in part, and remanded</u>.

Johnson May, Boise, attorneys for Appellant. Michelle R. Points argued.

Olsen Taggart PLLC, Idaho Falls, attorneys for Respondent. Steven L. Taggart argued.

_____

BEVAN, Chief Justice.

This appeal centers on a district court's application of state law and federal bankruptcy law to determine the statute of limitations for three breach of contract claims following an automatic stay in bankruptcy. Ralph and Paula Isom (the Isoms), facing foreclosure, entered into a deed in lieu of foreclosure agreement with Farms, LLC ("Farms"). The Isoms then leased the real property (a farm and various houses) back from Farms, subsequently defaulted on their obligations under the lease agreement, and filed a Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy. During the Isoms' bankruptcy, Farms also acquired several third-party claims against the Isoms from other independent creditors of the Isoms. The bankruptcy court denied the Isoms a discharge, and after the bankruptcy case closed, Farms sued the Isoms personally, alleging three

counts of breach of contract. Following a one-day bench trial, the district court awarded Farms a judgment of $1,281,501.68 as to Count III—related to Farms' purchase of the third-party claims—but concluded that Farms' remaining two claims related to the lease were barred by the applicable statute of limitations. The Isoms timely appealed, arguing that the district court erred in determining the applicable statute of limitations as to Count III. Farms timely cross-appealed, arguing the district court erred in applying the statutes of limitation as to Counts I and II. For the reasons discussed below, we affirm the district court's judgment as to Count III but reverse and vacate the judgment on Counts I and II.

## I. FACTUAL AND PROCEDURAL

On September 26, 2014, facing foreclosure, the Isoms signed a deed in lieu of foreclosure agreement transferring their interest in several parcels to Brad Hall & Associates (BHA). On September 30, 2014, the Isoms leased back the same property from BHA. The annual rent under the lease was $614,601.79 from September 30, 2014, through October 31, 2015, due in two payments: the first was $460,951.31 due February 1, 2015, and the second was $153,650.45 due August 1, 2015. On November 4, 2014, BHA quitclaimed its interest in the property to Farms, LLC. The Isoms made the first rent payment to Farms on January 30, 2015. On April 28, 2015, Farms sued the Isoms for claims unrelated to this appeal.[1] On July 31, 2015, the Isoms filed for Chapter 11 bankruptcy, which triggered an automatic stay under the Bankruptcy Code.

The Isoms then failed to make the August payment on the lease, which resulted in a termination of the lease under its terms. As a result, Farms incurred $22,568.50 in legal fees in a post-bankruptcy petition action to remove the Isoms from the property. Farms filed a motion with the bankruptcy court to: (1) compel the assumption or rejection of the lease; (2) compel performance of lease obligations; (3) determine that the lease had been terminated as of October 31, 2015; and (4) lift the automatic stay prohibiting Farms from taking action to recover possession of the property.

The bankruptcy court later ordered:

[The Isoms] shall have until October 31, 2015, to assume or reject the Lease Agreement dated September 30, 2014, between Brad Hall & Associates, Inc.

---

[1] This Court previously heard an appeal from these parties related to a forcible detainer action stemming from the Isoms' bankruptcy. *Farms, LLC v. Isom*, 169 Idaho 188, 188, 493 P.3d 947 (2021). While the parties and the underlying circumstances are the same, this case concerns facts unrelated to that case.

(subsequently assigned to Farms, LLC) and the Debtors []. In the event the Lease is not assumed on or before October 31, 2015, it shall be deemed REJECTED.

[ ] IT IS FURTHER ORDERED that on October 31, 2015, the Automatic Stay imposed by 11 U.S.C. § 362(a), to the extent it applies, is hereby terminated as to Movants and to the subject property. . . .

(This order will be referred to as the "Bankruptcy Order.").

The Isoms failed to assume the lease by October 31, 2015, but remained on the property until July 29, 2016. By November 14, 2017, the Isoms' Chapter 11 bankruptcy had been converted to Chapter 7 after they could not get a reorganization plan confirmed by the bankruptcy court. On June 13, 2019, the bankruptcy court denied the Isoms a Chapter 7 discharge and dismissed the case.

On March 23, 2021, Farms filed a complaint against the Isoms, alleging three counts of breach of contract. Count I sought damages against the Isoms for failure to pay rent under the lease. Count II sought holdover rent damages. Finally, Count III sought damages for the Isoms' failure to pay amounts due on several claims purchased by Farms from other creditors during the bankruptcy.

Following a one-day bench trial, the district court dismissed Counts I and II as untimely under the statute of limitations but concluded that Farms was entitled to an award of $1,281,501.68 for Count III, damages related to Farms' third-party claims. The Isoms timely appealed from the district court's decision, and Farms timely cross-appealed.

## II. STANDARDS OF REVIEW

"This Court exercises free review over the trial court's conclusions of law." *Syringa Networks, LLC v. Idaho Dept. of Admin.*, 159 Idaho 813, 822, 367 P.3d 208, 217 (2016) (citing *Quiring v. Quiring*, 130 Idaho 560, 563, 944 P.2d 695, 698 (1997)).

"Following a bench trial, this Court's review 'is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law.'" *Morgan v. New Sweden Irr. Dist.*, 160 Idaho 47, 51, 368 P.3d 990, 994 (2016) (quoting *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009)). The province of weighing conflicting evidence and testimony, and judging the credibility of witnesses, belongs to the trial court. *Borah*, 147 Idaho at 77, 205 P.3d at 1213. Thus, "this Court will liberally construe the trial court's findings of fact in favor of the judgment entered." *Id*. (citing *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999)). The Court will not set aside the trial court's findings of fact

3

unless they are clearly erroneous, nor will the Court "substitute its view of the facts for that of the trial court." *Id.* (quoting *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006)); *see also* I.R.C.P. 52(a)(7) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

Even in the face of conflicting evidence, clear error will not be found to exist where the findings are supported by substantial and competent evidence. *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (citing *Pandrea v. Barrett*, 160 Idaho 165, 171, 369 P.3d 943, 949 (2016)). "If there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal, there is substantial and competent evidence." *Id.* (citing *Greenfield v. Wurmlinger*, 158 Idaho 591, 598, 349 P.3d 1182, 1189 (2015)).

### III. ANALYSIS

This appeal and cross-appeal turn on the intersection of federal and state statutes to determine the applicable statute of limitations for claims filed after termination of an automatic stay in bankruptcy. The Isoms argue that a bankruptcy statute, 11 U.S.C. section 108(c)(2), provided a thirty-day statute of limitation period for Farms to file its complaint following the dismissal of the Isoms' bankruptcy case, making Farms' entire complaint untimely. Farms alternatively asserts that the Isoms misconstrue section 108(c), in that it specifically directs that state law controls this issue, in particular Idaho Code section 5-234, which extends the statute of limitation during a stay (here the automatic stay of bankruptcy), making the filing of Farms' complaint timely. Thus, Farms asks in its cross-appeal that the district court's statute of limitation analysis be overturned with respect to Counts I and II of its complaint. Farms also raises the additional issue of whether Farms is entitled to attorney fees and costs on appeal.

**A.      Section 108(c) of the Bankruptcy Code provides two alternative limitation periods for filing a non-bankruptcy claim following termination of the automatic stay.**

Section 108(c) of the Bankruptcy Code addresses when state law claims may be filed following termination of the automatic bankruptcy stay, and thus it applies to the Isoms' claims in this case. However, the parties interpret 11 U.S.C. section 108(c) in diametrically different ways. That statute provides that upon "termination or expiration of the [bankruptcy] stay," a statute of limitations for a civil action outside of bankruptcy expires *at the later of* (1) the time allowed under nonbankruptcy (state) law, or (2) thirty days after the termination of the bankruptcy stay:

4

(c) Except as provided in section 524 of this title, *if applicable nonbankruptcy law*, . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until *the later of—*

(1) *the end of such period, including any suspension of such period occurring on or after the commencement of the case*; or

(2) *30 days after notice of the termination or expiration of the stay under section 362*, 922, 1201, or 1301 of this title, as the case may be, *with respect to such claim.*

11 U.S.C. § 108(c) (emphasis added). We interpret this statute based on its plain language. *See Grace at Twin Falls, LLC v. Jeppesen*, 171 Idaho 287, 292, 519 P.3d 1227, 1232 (2022). If a nonbankruptcy law (in this case a state statute) provides a limitation period for commencing a civil action in a nonbankruptcy court, and that period has not expired at the time the bankruptcy petition is filed, then the limitation period does not expire until, including the length of the bankruptcy stay, the state limitation period runs, or thirty-days after the expiration of the bankruptcy stay, whichever is later.

The applicable limitations periods under Idaho law for Farms' claims are five years for Count I on the written lease, and four years for Counts II and III for contract actions "not founded upon an instrument in writing[,]" I.C. §§ 5-216, -217. Idaho law also provides that a limitations period does not include the time that an action is stayed by statute. Idaho Code section 5-234 is titled "Action stayed by injunction or statute." It provides that "the time of the continuance of the injunction or [statutory] prohibition is not part of the time limited for the commencement of the action." I.C. § 5-234.

The question now before us is whether Idaho Code section 5-234 (the applicable "nonbankruptcy law"), or 11 U.S.C. section 108(c)(2) (the thirty-day limitation period) provides the appropriate statute of limitations period.

The Isoms contend that section 5-234's tolling provision should not be applied here because 11 U.S.C. section 108(c)(2) is the more specific statute, limiting Farms' time for filing to thirty days after termination or expiration of the stay. But while the federal statute's thirty-day provision is arguably more specific than the state law referenced in section 108(c)(1), section 108 itself mandates that it is the *later* of the state statute or the thirty-day limitation period that governs

5

the question before us. With this framework in mind, we now turn to the district court's decisions here.

**B.      The district court did not err in determining Farms' claim under Count III of the complaint was timely filed.**

The Isoms frame their appeal through two arguments: (1) the district court's conclusion that Count III was not time-barred was not factually or legally supported; (2) Farms obtained leave from the automatic stay in 2015 and could have commenced litigation on the claims after acquiring them in 2017. We resolve both arguments against the Isoms.

*1. Idaho Code section 5-234 applies to establish the limitation period applicable to matters stayed by statute.*

The Isoms first challenge the district court's conclusion that Count III of Farms' complaint was not time-barred, arguing that the district court failed to recognize that 11 U.S.C. section 108(c)(2) controls over what Farms argues is the less specific Idaho Code section 5-234. The Isoms argue the district court focused on Idaho Code section 5-324 without considering the limits of 11 U.S.C. section 108(c)(2). We disagree. The district court properly applied Idaho Code section 5-234 to calculate the limitation period, as directed by section 108(c)(1). The Isoms misread section 108(c) and how the statute is to be interpreted alongside other provisions in the Bankruptcy Code as well as other state statutes.

Below, the district court examined the relationship between the automatic stay in the Isoms' bankruptcy case and the statute of limitations applicable to the breach of contract claims against the Isoms:

> In Idaho, the automatic bankruptcy stay functions as a pause concerning the effective statute of limitations. Under Idaho Code Ann. [section] 5-234, "[w]hen the commencement of an action is stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Here, the commencement of an action was stayed under the automatic stay until the stay was lifted and the statute of limitations did not run during the pendency of the bankruptcy proceedings. However, under 11 U.S.C.A. [section] 362(c), "the stay of any act under subsection (a) of this section continues until the earlies[t] of (C) if the case is under chapter 7 of this title concerning an individual [] the time a discharge is granted or denied." Here, the Bankruptcy Court denied Isom[s'] discharge on June 13, 2019. Therefore, the application of the automatic stay was lifted from claims not addressed by the [Bankruptcy] Order on June 13, 2019.
>
> . . . Under Idaho Code Ann. [section] 5-216, an action upon any contract, obligation or liability founded upon an instrument in writing must be brought within

6

five (5) years' time. Conversely, under Idaho Code Ann. [section] 5-217, any action upon a contract, obligation or liability not founded upon an instrument [in] writing has a statutory limitation of being pursued within four (4) years.

We agree with the district court's analysis. The Isoms filed for bankruptcy on July 31, 2015, at a time when none of the statutes of limitation for the three actions here had expired. Under Idaho Code section 5-234, from July 31, 2015—the date the Isoms filed for bankruptcy and the date the automatic stay began—until June 13, 2019—the date the discharge was denied, Farms' ability to pursue these claims was stayed. *See* U.S.C. § 108(c)(2). Under Idaho Code section 5-234, when the commencement of an action is stayed as the result of a statutory prohibition, the time of the prohibition is not part of the time allotted for the commencement of claims. The Isoms' contention that 11 U.S.C. section 108(c)(2) governs and provides only a thirty-day extension to pursue the claim ignores subsection (1). Indeed, while 11 U.S.C. section 108(c)(2) grants a thirty-day "grace period" that is excluded from the applicable statute of limitations period, subsection (c) further clarifies that this grace period applies only if a state statute of limitations is not paused during a bankruptcy stay.

The cases that interpret section 108(c) bolster our interpretation that it is the *later* of the state statute of limitations (as tolled by Idaho Code section 5-324) *or* the thirty-day period under 11 U.S.C. section 108(c)(2) that applies to calculate the statute of limitations. For example, the Second Circuit has explained that "by its terms [section] 108(c) does not provide for tolling of any externally imposed time bars" while a debtor is in bankruptcy. *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993). "The reference in [section] 108(c)(1) to 'suspension' of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather this language merely incorporates suspensions of deadlines that are expressly provided in other federal or state statutes." *Id.* (emphasis omitted). Thus, the period that ends thirty days after notice of termination of the stay only applies when a state statute like section 5-234 is not in place.

The Isoms also encourage us to consider *In re Silva*, 215 B.R. 73 (Bankr. D. Idaho 1997) and *Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292 (5th Cir. 1995), to support the proposition that section 108(c)(2) is applicable here. These cases, however, are distinguishable.

In *In re Silva*, the issue was a California judgment that, under California law, expired ten years after entry and whether the thirty-day period of section 108(c)(2) came into play to extend the duration of a California judgment. Idaho's bankruptcy court ruled that it did not:

7

In this case, Debtor's petition was filed on August 13, 1993. The California judgment, under "applicable nonbankruptcy law," expired ten years subsequent to date of the entry of the judgment, or in other words, on June 4, 1994. Debtor was discharged in bankruptcy on April 28, 1994, which terminated the automatic stay against actions against the Debtor by operation of law. 11 U.S.C. § 362(c)(2)(C). The 30 day extension of time provided by 11 U.S.C. [section] 108(c)(2), (i.e. May 28, 1994) was thus prior in time to the date of expiration of the judgment under the California statutes. Thus, under the facts of this case, 11 U.S.C. § 108(c) had no tolling effect on the judgment in question, and it would expire on June 4, 1994 unless validly renewed or revived under state law.

215 B.R. at 76. Thus, the bankruptcy court applied the California judgment length of ten years and noted that it expired *after* the thirty-day period under 11 U.S.C. section 108(c)(2), and therefore, the state statute controlled. The same analysis, applied here, supports Farms' position, not the Isoms' position.

*Rogers* is also no help to the Isoms. In *Rogers*, which arose in Louisiana, Ronald Rogers sued a property owner (who had filed bankruptcy) where he was injured. Under Louisiana law, such claims must be brought within one-year, which period expired during the bankruptcy stay. Louisiana also has no tolling provision like Idaho Code section 5-234. Rogers' claims were dismissed before the United States District Court because the one-year statute of limitations expired during the property owner's bankruptcy and Rogers did not file within section 108(c)(2)'s thirty-day grace period. Rogers appealed and the Fifth Circuit held that since no applicable tolling provision existed under Louisiana law, the thirty-day grace period under section 108(c)(2) applied: "a party must file suit within the thirty-day grace period after the end of the stay." 42 F.3d at 297. The Fifth Circuit explained that "[section] 108(c) does not create a separate tolling provision" and that the statute "plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through [section]108(c)." *Id.* (citation omitted). Thus, since no state tolling statute covered Rogers' situation, Rogers' only option would have been to file within thirty days after the stay ended, which he failed to do. *Id.* Thus, his claim was appropriately dismissed.

*Rogers* is readily distinguished from this case. As noted, no Louisiana statute tolled its one-year statute of limitations during bankruptcy; Idaho Code section 5-234 provides such relief. *Rogers* is thus of little moment here, other than showing why Farms' claims survive under Idaho's tolling statute (Idaho Code section 5-234).

8

An automatic stay under 11 U.S.C. section 362 constitutes a statutory prohibition as envisioned by Idaho Code section 5-234. As a result, the limitations periods set forth in Idaho Code sections 5-216 and 5-217 were stayed from the date of the Isoms' bankruptcy filing, July 31, 2015, to when the bankruptcy case was dismissed on June 13, 2019. Thus, between July 31, 2015, and June 13, 2019, the statutes of limitation under Idaho Code sections 5-216 and 217 were tolled, giving Farms until June 2023 and June 2024 to bring claims against the Isoms, respectively. The district court here correctly applied Idaho Code section 5-234 to calculate the time Farms had to sue. Accordingly, the district court's decision on Count III is affirmed.

> 2. *The Bankruptcy Court order did not grant Farms leave from the automatic stay to pursue personal claims.*

The Isoms argue, alternatively, that Farms could have obtained relief from the automatic bankruptcy stay on October 31, 2015, and sued on the claims it acquired in 2017. This argument, however, overstates the scope of stay relief that the bankruptcy court granted during the bankruptcy proceedings and misunderstands section 362 of the Bankruptcy Code.

Farms moved the Bankruptcy Court for relief from the automatic stay under 11 U.S.C. section 362(d)(1). The Bankruptcy Court granted limited relief, writing: "IT IS FURTHER ORDERED that on October 31, 2015, the Automatic Stay imposed by 11 U.S.C. § 362(a), to the extent it applies, is hereby terminated as to Movants *and the subject property*[.]" (Capitalization original; emphasis added). The order specified that it applied "to the subject *property* described[.]" (Emphasis added.) Under 11 U.S.C. section 362(a), "the filing of a bankruptcy petition automatically halts efforts to collect prepetition debts from the bankrupt debtor outside the bankruptcy forum." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020). That stay can only be lifted: "(d) On request of a party in interest and after notice and a hearing[.]" 11 U.S.C. § 362(d). Subsection (d) further limits the circumstances under which the stay may be terminated or modified to, in part, whether the request is: "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362 (d)(1). Section 362(d)(1) thus provides for stay relief against property, not the debtors individually. *In re Cruz*, 516 B.R. 594, 602 (B.A.P. 9th Cir. 2014); *see also* 11 U.S.C. § 362(d)(1) (section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"). "The whole purpose in providing adequate protection for a creditor is to [e]nsure that the creditor receives the value for which the

9

creditor bargained prebankruptcy." *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). Thus, the statute allows creditors, such as Farms, who are inadequately secured, to gain access to property in the estate during the bankruptcy proceeding. *See* 11 U.S.C. § 362(d)(1). The bankruptcy court's order here explicitly stated that the stay was terminated as it applied to the specified *property* in the bankruptcy estate.

Farms' claims here seek a monetary judgment against the Isoms *personally*; the claims do not pertain to property. Circumstances in which stay relief for claims against the debtor personally are permitted are governed under 11 U.S.C. section 362(c). Those limited circumstances include the earliest of: "(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied[.]" 11 U.S.C. § 362(c)(2)(A)–(C).

Farms could not have obtained stay relief from the automatic stay on October 31, 2015, to pursue the Isoms personally; Farms was prohibited from doing so under section 362(c). Instead, Farms was only permitted to do so beginning June 13, 2019, when bankruptcy relief was denied to the Isoms, and their case was dismissed. As a result, June 13, 2019, was the earliest Farms could pursue a claim against the Isoms personally—not October 31, 2015. The Isoms' argument to the contrary is without merit.

**C.     The district court erred in determining that Counts I and II were barred by the applicable statute of limitations.**

Farms cross-appeals against the Isoms, contending that the district court erred when it held the statute of limitations barred Farms' claims related to the lease and tenancy. Farms does not make additional argument distinct from its response above, except to emphasize that the bankruptcy stay relief only allowed it to obtain possession of the property covered by the lease and file a claim in the bankruptcy proceedings; it did not allow Farms to pursue the Isoms personally. As we have held above, Farms is correct.

Count I of Farms' complaint concerned breach of contract under the lease agreement for failure to pay rent. It was undisputed that the Isoms breached the lease by failing to make the August 1, 2015, lease payment. Following the Isoms' breach, the bankruptcy court ordered the Isoms to either accept or reject the lease by October 31, 2015; the Isoms failed to do so. As a result, the bankruptcy court held that the Isoms owed $153,650.45 on the lease and owed $22,568.50 in post-petition fees. According to the district court, although the Isoms defaulted on the lease on

August 1, 2015, Farms' claim for breach on the lease and post-petition attorney fees accrued on October 31, 2015. The district court also explained that because the bankruptcy court lifted the automatic stay imposed under 11 U.S.C. section 365 on October 31, 2015, the statute of limitations effectively began to run on the day the stay was lifted. As to Count I, the district court concluded:

> Here, the date of the Isom[s'] breach was found to be on the same date as the date whereby the Bankruptcy Court lifted the Automatic Stay on this claim. Therefore, in that the date of breach was October 31, 2015, the statute of limitations extended to and thereupon expired as of October 31, 2020. In that Farms['] claim for breach was filed on March 23, 2021, it is the conclusion of this Court that Count 1 was brought outside and beyond the statute of limitations. Therefore, Count I is hereby dismissed under Isom's [sic] affirmative defense citing the relevant statute of limitations and the Farm's [sic] untimely filing of this case.

The district court's rationale for dismissing this count presumed that the Bankruptcy Order lifted the automatic stay on this claim the same day that the Isoms breached the lease—October 31, 2015. The district court's conclusion misapprehended the scope of the bankruptcy court's order. "The stay serves to maintain the status quo and prevent dismemberment of the estate during the pendency of the bankruptcy case." *Ritzen Group, Inc.*, 140 S. Ct. at 589 (cleaned up). "Among other things, the stay bars commencement or continuation of lawsuits to recover *from the debtor*, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property." *Id.* (emphasis added).

As we noted above, the bankruptcy court granted stay relief only as to the *property* covered by the lease agreement under Count I on October 31, 2015. The court did not grant stay relief under 11 U.S.C. section 362(c) for *personal* claims against the Isoms. As a result, we reverse the district court's decision to dismiss Count I and vacate the judgment. The statute of limitations on that claim did not begin to run again until the Isoms' Chapter 7 petition was dismissed on June 13, 2019. Count I was thus timely filed under our analysis set forth above.

Count II concerned breach of contract under a lease agreement as holdover tenants. Because "[a] holdover tenancy is a tenancy arising when a person who has been in lawful possession wrongfully remains as a holdover after his or her interest has expired[,]" Idaho Code section 5-217 sets the applicable statute of limitations. Under section 5-217, "an action upon a contract, obligation or liability not founded upon an instrument of writing" must be pursued within four years of the breach. The district court found that the Isoms' first breach as a holdover tenant occurred on October 31, 2015, and a new breach occurred on the first day of each month that the

Isoms remained on the property without paying rent. Even so, the district court explained that, as a holdover tenant, "the final possible occurrence of a breach of contract arose on July 1, 2015[,] that being the first day [the] Isoms remained in possession of the Lease Premises." The court explained:

> As determined above, the [Bankruptcy] Order effectively lifted the automatic stay as it related to Farms and the Lease Premises as of October 31, 2015. Therefore, the [Bankruptcy] Order provided that the statute of limitation for the Holdover Lease was not impacted by the previous imposition of the automatic stay.
>
> . . .
>
> Here, [the] Isom[s'] evacuated the premises on or before July 29, 2015, and thus provided that the last occurrence of breach accrued on July 1, 2015. Therefore, in that the Holdover Lease was not founded upon an instrument of writing and was not precluded from prosecution by the automatic stay under the [Bankruptcy] Order, any action brought forth on a breach of contract theory *must have been filed on or before July 1, 2019*. Therefore, based upon a preponderance of evidence that Farms filed its case beyond the statute of limitations, Count II is hereby dismissed for untimeliness following Isom[s'] affirmative defense in the matter.

(Emphasis added).

As with Count I, we hold that the district court misinterpreted the scope of the Bankruptcy Court's order granting stay relief and read it to extend to the Isoms personally. As noted, the scope of the Bankruptcy Court's order was restricted to property within the bankruptcy estate and did not grant relief from the stay against the Isoms personally. For the same reasons we affirm as to Count III, we reverse as to Counts I and II and vacate the judgment of dismissal as it relates to Counts I and II. We direct the district court to enter judgment on Farms' behalf on all three counts, subject to that court's determination of the amount now due on such judgment.

**D.     Farms is entitled to attorney fees and costs.**

Both parties request attorney fees and costs on appeal under Idaho Appellate Rule 41 and Idaho Code section 12-120(3). Farms also points to the lease agreement, suggesting that it, too, provides for such fees.

"[W]here there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 568–69, 836 P.2d 511, 514–15 (1992) (citation omitted). Farms requests attorney fees under this provision in the lease agreement: "The failure of either party to comply with the terms of this Lease

will obligate that party to pay all expenses, including but not limited to reasonable attorney fees and costs, incurred by the other party because of the failure." Accordingly, under the lease terms, Farms is entitled to its attorney fees. Farms is also entitled to its costs under Idaho Appellate Rule 40.

## IV. CONCLUSION

The district court's judgment as to Count III is affirmed. The district court's judgment on Counts I and II is vacated. The case is remanded. Costs and attorney fees are awarded to Farms, LLC.

JUSTICES BRODY, STEGNER, MOELLER, and ZAHN CONCUR.